868 F.2d 1043
 Mary Beth RIPPLINGER; David Lee; Sylvia Kammeyer; Steve
Kammeyer; Robert Brown; Barbara Wodrich; Brian Heath;
Darlene Schell; Barb Chew; George Wectstein; Judy Price;
Ed Price; Bill Schindler; Robert S. McBride; Wayne
Sharpe, Plaintiffs-Appellants,
v.
Thomas A. COLLINS, in his official capacity as Maricopa
County Attorney, Defendant-Appellee.
 No. 87-2501.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 16, 1988.
Decided Feb. 24, 1989.
 
 Richard J. Hertzberg, Phoenix, Ariz., for plaintiffs-appellants.
 Benjamin W. Bull, Phoenix, Ariz., for defendant-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before SCHROEDER and WIGGINS, Circuit Judges, and STEPHENS, Jr.,* District Judge.
 WIGGINS, Circuit Judge:
 
 
 1
 Plaintiffs, Mary Beth Ripplinger and other owners of video stores, adult theatres, and bookstores, appeal the district court's grant of summary judgment in favor of Thomas Collins, the Maricopa County Attorney [hereinafter the "state" or "Collins"]. Plaintiffs seek declaratory and injunctive relief, claiming the Arizona obscenity regulation scheme is unconstitutional on its face. We affirm in part and reverse in part.
 
 I.
 BACKGROUND
 
 2
 In the spring of 1986, the Arizona legislature enacted a new obscenity statute. The new statute altered the definition of "appeal to the prurient interest" and changed the scienter requirement. Ariz.Rev.Stat. Sec. 13-3501(1)(a)(i), (2)(a), (3)(a) (Supp.1987). The new statute also raised the production, publication, sale, possession, and presentation of obscenity from a class 6 to a class 5 felony. Id. Sec. 13-3502.[1] Broadcasts or telecasts licensed under the Federal Communications Act or under title 9, chapter 5, article 1.1 of the Arizona Code (cable television) are exempt from the statute's coverage. Id. Sec. 13-3511.
 
 
 3
 Plaintiffs are owners and managers of video stores, adult bookstores or theaters in Maricopa County, Arizona. Plaintiffs all either deal in or desire to deal in the "mainstream of sexually explicit materials." Plaintiffs filed suit seeking declaratory and injunctive relief on the grounds that section 13-3502 of the Arizona obscenity statute violates the first amendment, equal protection, due process, the eighth amendment protection against excessive punishment of the United States Constitution, and the separation of powers doctrine of Article 3 of the Arizona Constitution. The district court denied plaintiffs' motion for a preliminary injunction and then granted partial summary judgment in favor of the state, rejecting all plaintiffs' constitutional arguments except the excessive punishment claim. This last issue was settled by stipulation. The eighth amendment punishment issue thus is not before us and we express no view on it. Plaintiffs timely appealed and we have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 II.
 STANDARD OF REVIEW
 
 4
 We review a grant of summary judgment de novo. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986).
 
 III.
 ANALYSIS
 A. Jurisdictional Issues
 1. Standing
 
 5
 Collins moved to dismiss this case in the district court on the ground that the court lacked jurisdiction because the complaint did not establish that plaintiffs had standing. Although this issue is not raised on appeal, issues of Article III standing are treated as jurisdictional, and must be addressed by this court. See Bender v. Williamsport Area School Dist., 475 U.S. 534, 541-42, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). We review the district court's decision on standing de novo. Bruce v. United States, 759 F.2d 755, 758 (9th Cir.1985).
 
 
 6
 The first element of the standing inquiry that plaintiffs must satisfy is the "case" or "controversy" requirement of Article III of the United States Constitution.[2] Secretary of State v. J.H. Munson Co., 467 U.S. 947, 954, 104 S.Ct. 2839, 2845, 81 L.Ed.2d 786 (1984). Article III requires an injury in fact that fairly can be traced to the challenged action, and that is likely to be redressed by a favorable decision. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).
 
 
 7
 To fulfill the "actual injury" requirement, plaintiffs must show a " 'reasonable threat of prosecution for conduct allegedly protected by the Constitution.' " Polykoff v. Collins, 816 F.2d 1326, 1331 (9th Cir.1987) (quoting Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 625 n. 1, 106 S.Ct. 2718, 2722 n. 1, 91 L.Ed.2d 512 (1986)). Here, at the time of filing this lawsuit, plaintiffs had not actually been prosecuted for violating the obscenity statute.[3] Each of the plaintiffs, however, owned or worked for a bookstore or video store that sold "adult materials." Plaintiffs alleged that they sold protected materials that Collins believed fell within the coverage of the statute. According to the affidavit of Randy Wakefield, deputy county attorney, the police in 1986 investigated possible violations of the obscenity statute by plaintiff Wayne Sharpe. Mr. Wakefield warned Mr. Sharpe that an obscenity charge would be initiated if he continued to distribute "hardcore pornography." Moreover, on June 4th and June 9th, 1987, five defendants were indicted in Maricopa County for violations of the new obscenity statute. Accordingly, plaintiffs have shown a reasonable threat of prosecution under the new statute. Polykoff, 816 F.2d at 1331. Also, the alleged chilling effect on protected speech of Arizona's statutory system for obscenity would be immediate. Id.; see also Virginia v. American Booksellers Ass'n, Inc., 484 U.S. 383, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988) (preenforcement suit can be brought to challenge obscenity law partly because of danger of self-censorship). This is a sufficient allegation of "actual injury" for purposes of conferring standing.
 
 
 8
 In addition to the Article III "case" or "controversy" limitation, prudential considerations limit the challenges federal courts are willing to hear. In general, the plaintiff cannot rest his claim to relief on the legal rights or interests of third parties. See J.H. Munson, 467 U.S. at 955, 104 S.Ct. at 2846. In first amendment cases, however, the Supreme Court has developed the overbreadth doctrine to allow a litigant whose own activity is subject to valid regulation to assert that a statute is unconstitutional "on its face" because it applies to protected expression of others. City Council v. Taxpayers for Vincent, 466 U.S. 789, 798-99, 104 S.Ct. 2118, 2125-26, 80 L.Ed.2d 772 (1984).[4] Similarly, when a statute prospectively limits first amendment rights and the statute is so vague that a person of reasonable intelligence cannot determine what the boundaries of that limitation are, one whose conduct is clearly covered by the statute has standing to challenge the statute for vagueness. Planned Parenthood v. State of Arizona, 718 F.2d 938, 946-47 (9th Cir.1983) (quoting Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Comm'n, 429 U.S. 167, 177, 97 S.Ct. 421, 427, 50 L.Ed.2d 376 (1976)). We conclude that plaintiffs here have standing to raise the rights of third parties by alleging vagueness and overbreadth.
 
 
 9
 Plaintiffs' equal protection claim also presents a standing issue. Plaintiffs argue that the exemption granted to cable television is unconstitutional. Even if plaintiffs prevail on this argument and we strike down the exemption, plaintiffs will not benefit because they still are covered by the statute. If plaintiffs did not have standing to challenge the exemption, however, underinclusive statutes would be effectively insulated from constitutional challenge. See Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S.Ct. 1722, 1726, 95 L.Ed.2d 209 (1987). Plaintiffs thus have standing to claim a constitutional violation because others similarly situated are exempt from the operation of a state law adversely affecting the plaintiffs. Id.
 
 2. Abstention
 
 10
 Collins claims that the district court erred in denying his motion to abstain under Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Collins argues that plaintiffs' attorney, Mr. Hertzberg, has raised the same constitutional challenges to the Arizona obscenity statute in his motion to dismiss criminal prosecutions in Arizona Superior Court and that the federal courts should defer to a forthcoming state court determination. The district court's application of the Pullman abstention doctrine is reviewed for an abuse of discretion. Polykoff, 816 F.2d at 1334.
 
 
 11
 Abstention from the exercise of federal jurisdiction is the exception rather than the rule. Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). To abstain under Pullman, a federal court must find all three of the following factors: first, the complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open; second, a definitive ruling on the state issue would terminate the controversy; and third, the possibly determinative issue of state law is doubtful. McMillan v. Goleta Water Dist., 792 F.2d 1453, 1458 (9th Cir.1986), cert. denied, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987).
 
 
 12
 In first amendment cases, the first of these factors will almost never be present because the guarantee of free expression is always an area of particular federal concern. See J-R Distribs. v. Eikenberry, 725 F.2d 482, 488 (9th Cir.1984), rev'd on other grounds sub nom. Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). Moreover, abstention would " 'force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings [and] effect the impermissible chilling of the very constitutional right he seeks to protect.' " Id. at 488 (quoting Zwickler v. Koota, 389 U.S. 241, 252, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967)).
 
 
 13
 This court ruled on a very similar abstention question in Polykoff, concerning overbreadth challenges to the previous version of the Arizona obscenity statute. The court found that the abstention question was controlled by Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). See Polykoff, 816 F.2d at 1334. In Brockett, three concurring Justices argued that the district court should have abstained from hearing a constitutional challenge to a four-day-old state obscenity law. Brockett, 472 U.S. at 507-10, 105 S.Ct. at 2803-05 (O'Connor, J., concurring). Five Justices, however, were not persuaded and reached the merits of the challenge. Id. at 493-507, 105 S.Ct. at 2796-2804.
 
 
 14
 We are satisfied that the district court did not abuse its discretion in declining to abstain under Pullman. This case does not meet the first Pullman test because it involves an issue of particular federal concern. Moreover, in Polykoff this court, following Brockett, found abstention to be inappropriate in a first amendment case, even where the state court had not had an opportunity to narrow the statute.[5]
 
 B. Cable Television Exemption
 
 15
 The Arizona statute exempts cable television from the coverage of the obscenity statute. The exemption provides: "The provisions of this chapter shall not apply to broadcasts or telecasts through facilities licensed under the Federal Communications Act or Title 9, chapter 5, Article 1.1." Ariz.Rev.Stat. Sec. 13-3511 (Supp.1987).[6]
 
 
 16
 Our initial inquiry is whether the exemption should be judged by strict scrutiny or by the rational basis test. In M.S. News Co. v. Casado, 721 F.2d 1281 (10th Cir.1983), the Tenth Circuit addressed the proper test to apply to exemptions from obscenity statutes. The court found that a classification distinguishing between commercial and noncommercial enterprises in an ordinance prohibiting the promotion of sexually oriented materials to minors should be judged by the rational basis test. Id. at 1291. The court relied in part on language from Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). Casado, 721 F.2d at 1291 n. 1. In upholding a statute regulating exposure of minors to sexually explicit material, the Ginsberg Court noted:
 
 
 17
 To sustain state power to exclude material defined as obscenity by Sec. 484-h requires only that we be able to say that it was not irrational for the legislature to find that exposure to material condemned by statute is harmful to minors.
 
 
 18
 Id. 390 U.S. at 641, 88 S.Ct. at 1281. The Casado court upheld the classification because it bore a rational relationship to the legitimate state interest in stemming the tide of commercialized obscenity. Casado, 721 F.2d at 1291-92; see also Piepenburg v. Cutler, 649 F.2d 783, 787 (10th Cir.1981) (upholding obscenity statute that provided affirmative defense for persons with a scientific, educational or governmental justification for possessing pornographic material).
 
 
 19
 Two district courts have expressly disagreed with the result reached in Casado. In Upper Midwest Booksellers Ass'n v. City of Minneapolis, 602 F.Supp. 1361 (D.Minn.), aff'd, 780 F.2d 1389 (8th Cir.1985), the court found that an exemption for schools and museums should be judged by strict scrutiny because a fundamental right, free speech, was involved. Id. at 1374. The court found that the reference in Ginsberg was not contrary to this conclusion because Ginsberg only meant that courts should not second-guess a legislative judgment that exposure to sexually explicit material is harmful to minors. In Upper Midwest, however, the question was the extent to which the court should scrutinize a classification allowing some but not others to distribute materials already judged harmful. Id. Similarly, in American Booksellers Ass'n, Inc. v. Webb, 643 F.Supp. 1546 (N.D.Ga.1986), the court followed Upper Midwest and found strict scrutiny applicable to an exemption for schools. Id. at 1555.[7]
 
 
 20
 We agree with the Tenth Circuit's approach in Casado. The Supreme Court has held that obscene speech is not protected by the first amendment. See Miller v. California, 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). A valid obscenity statute that follows the three-part definition of obscenity set out in Miller does not punish the exercise of a fundamental right. There is no fundamental right to engage in obscene speech. Strict scrutiny is thus not appropriate.
 
 
 21
 The Supreme Court cases applying strict scrutiny to classifications in statutes regulating speech are easily distinguished. These challenged statutes all regulated or prohibited protected speech, rather than obscenity. See Arkansas Writers' Project, 107 S.Ct. at 1726-27 (discriminatory tax on protected periodicals); Carey v. Brown, 447 U.S. 455, 460, 100 S.Ct. 2286, 2290, 65 L.Ed.2d 263 (1980) (peaceful residential picketing); Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972) (peaceful picketing next to a school).[8] Moreover, the classifications in these statutes were all based on the content of speech. In contrast, the Arizona obscenity statute does not differentiate between booksellers and cable television based on the content of the material distributed, but on the medium of expression.
 
 
 22
 Finally, no first amendment policy would be served by applying strict scrutiny to the cable television exemption. Although the distribution of obscenity can be regulated, prohibited, and criminalized, a state legislature need not choose to do so. The effect of our striking the exemption here would be to criminalize more speech than the Arizona legislature has chosen to criminalize. This result would not serve the first amendment policy of encouraging and furthering free expression.
 
 
 23
 Because the exemption for cable television does not involve a fundamental right or suspect criterion, we apply a rational basis test. Such classifications are upheld if they are rationally related to a legitimate state interest. See New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (per curiam). We will invalidate a statutory classification only if no grounds can be conceived to justify it. See Schilb v. Kuebel, 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971).
 
 
 24
 Applying this test, we find that the cable television exemption withstands an equal protection challenge. The interest asserted by Collins is that the cable television exemption was adopted to avoid possible conflict with federal regulation of radio and television broadcasting. As plaintiffs concede, this concern may be legitimate with regard to the exemption for facilities licensed by the FCC. Accord Allen B. Dumont Laboratories, Inc. v. Carroll, 184 F.2d 153, 156 (3d Cir.1950), cert. denied, 340 U.S. 929, 71 S.Ct. 490, 95 L.Ed. 670 (1951). As for cable television, however, a federal statute enacted in 1984 clearly preserves the states' power to prosecute obscenity. The statute provides:
 
 
 25
 Nothing in this title shall be deemed to affect the criminal or civil liability of cable programmers or cable operators pursuant to the Federal, State, or local law of ... obscenity ... or other similar laws....
 
 
 26
 47 U.S.C. Sec. 558 (Supp.1988); see also Jones v. Wilkinson, 800 F.2d 989, 990-91 (10th Cir.1986) (per curiam), aff'd, 480 U.S. 926, 107 S.Ct. 1559, 94 L.Ed.2d 753 (1987); Cruz v. Ferre, 571 F.Supp. 125, 134 (S.D.Fla.1983) (ordinance applying only to cable television may not survive strict scrutiny). We can, however, conceive of other grounds for the exemption. In its amicus brief, the State of Arizona points out that the legislature may have determined that cable regulation is better left to federal authorities or that cable television is less pervasive and extreme in its sexual content. Valid distinctions between cable and other broadcasting may justify differential treatment. See Home Box Office, Inc. v. FCC, 567 F.2d 9, 43, cert. denied, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977); Cruz, 571 F.Supp. at 132. The exemption thus does not violate the equal protection clause.
 
 C. The "Prurient Appeal" Test
 
 27
 The definition of obscenity in Miller requires that the material, taken as a whole, "appeal to the prurient interest in sex." 413 U.S. at 24, 93 S.Ct. at 2615. The Arizona obscenity statute provides:
 
 
 28
 In order for an item as a whole to be found or intended to have an appeal to the prurient interest, it is not necessary that the item be successful in arousing or exciting any particular form of prurient interest either in the hypothetical average person, in a member of its intended and probable recipient group or in the trier of fact.
 
 
 29
 Ariz.Rev.Stat. Sec. 13-3501(2)(a) (Supp.1987) (emphasis added). Plaintiffs argue that this elaboration on the "prurient appeal" test is defective in the three ways discussed below.
 
 
 30
 1. "Effect" or "Impact" on the Average Person
 
 
 31
 Plaintiffs claim that Arizona's prurient appeal test unconstitutionally condemns material that does not have the effect of arousing a shameful or morbid sexual interest in the average person.[9] Plaintiffs urge that such an effect or impact is required by leading Supreme Court obscenity cases such as Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), Manual Enterprises, Inc. v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962), and Miller, 413 U.S. at 15, 93 S.Ct. at 2610. Collins responds that the correct test is not whether the material actually arouses the average person, but whether the object of the work is to arouse.
 
 
 32
 The Supreme Court has not addressed whether "appeal to the prurient interest" requires an actual sexual impact on the average person. The modern origin of the prurient interest test is the Roth decision. The Court elaborated on the test in a footnote: "I.e., material having a tendency to excite lustful thoughts." 354 U.S. at 487 n. 20, 77 S.Ct. at 1310 n. 20 (emphasis added). The Court stated further: "We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I., Model Penal Code Sec. 207.10(2)...." Id.; see also Childs v. Oregon, 431 F.2d 272, 274-75 (9th Cir.1970) (finding that Oregon court properly followed Roth in adopting A.L.I. Model Penal Code test), rev'd on other grounds, 401 U.S. 1006, 91 S.Ct. 1248, 28 L.Ed.2d 542 (1971). The A.L.I. test reads as follows:
 
 
 33
 (1) Obscene Defined. Material is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest, in nudity, sex or excretion, and if in addition it goes substantially beyond customary limits of candor in describing or presenting such matters. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be designed for children or other specially susceptible audience.
 
 
 34
 Model Penal Code Sec. 251.4 (Official Draft 1962). The A.L.I. added this explanation of the definition:
 
 
 35
 a test for obscenity was preferred that focused on the nature of the attraction of the material involved rather than on any supposed but unverifiable tendency toward particular consequences. Although prior definitions of obscenity rarely focused on the appeal of the material rather than on its tendency to produce one or another consequence, the terms of the Model code formulation were not entirely novel.
 
 
 36
 Id. comment 4, at 491. The A.L.I. test thus seems to focus on the quality or nature of the material itself rather than on its actual effect on anyone.
 
 
 37
 The Court in Roth, however, also referred to the "impact" on the average person in the community. 354 U.S. at 490, 77 S.Ct. at 1312. In addition, subsequent cases have used such "impact" or "effect" language. See, e.g., Miller, 413 U.S. at 33, 93 S.Ct. at 2620 (material should be judged by impact on average person, rather than on particularly sensitive); Manual Enterprises, 370 U.S. at 487-88, 82 S.Ct. at 1436-37 (Congress has barred material from mails which, from standpoint of its effect, predominantly appeals to prurient interest).
 
 
 38
 The Fourth Circuit has specifically addressed whether "appeal to the prurient interest" requires that the average person be sexually aroused by the material. In United States v. Guglielmi, 819 F.2d 451, 454 (4th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988), the defendant claimed that the prurient appeal branch of the Miller test could only be satisfied if the average person viewing the material would experience sexual arousal. The court rejected this argument, finding that the "average person comes into the test not as the object of the appeal but as its judge." Id. at 454. The court endorsed the A.L.I. approach, defining appeal to the prurient interest as a reference " 'to qualities of the material itself: the capacity to attract individuals eager for a forbidden look.' " Id. at 455 (quoting Model Penal Code Sec. 207.10(2) comments, at 10 (Tent. Draft No. 6, 1957)); see also Dunlap v. State, 292 Ark. 51, 58, 728 S.W.2d 155, 158 (1987) (obscene material "attempts to activate prurient interests [and] whether or not the material is successful in doing so is beside the point"), cert. denied sub nom. Dunlap v. Arkansas, --- U.S. ----, 108 S.Ct. 155, 98 L.Ed.2d 111 (1987). The court pointed out that the defendant's test would result in the most offensive material being found not obscene. The more offensive the material, the more likely that the "average person" would react with revulsion and disgust, rather than with sexual arousal. Guglielmi, 819 F.2d at 455.
 
 
 39
 We agree with the approach in Guglielmi. The references in the Supreme Court cases to "impact" and "effect" on the average person mean that the material is to be judged by the standards of the average person, and not by the standards of the most sensitive person in the community. The Court has never stated that in judging material by the standards of the average person, the juror must find that the average person would be sexually aroused. In Pinkus v. United States, 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed.2d 293 (1978), the Court explained:
 
 
 40
 The point of these passages [from Miller and Smith v. United States, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977) ] was to emphasize what was an issue central to Roth, that "judging obscenity by the effect of isolated passages upon the most susceptible persons, might well encompass material legitimately treating with sex, and so it must be rejected as unconstitutionally restrictive of the freedoms of speech and press."
 
 
 41
 ....
 
 
 42
 [The trial court] explicitly said the jury should not use sensitive persons as a standard, and emphasized that in determining the "average person" standard the jury "must include the sensitive and the insensitive, in other words ... everyone in the community."
 
 
 43
 ....
 
 
 44
 [T]he term "average person" as used in this charge means what it usually means, and is no less clear than "reasonable person" used for generations in other contexts.
 
 
 45
 Id. at 299-300, 98 S.Ct. at 1812-13 (citations and footnote omitted) (emphasis added).
 
 
 46
 Moreover, plaintiffs' sexual arousal test would lead to nonsensical results. If the juror, viewing himself as the average person, was repulsed rather than aroused, he should find the material not obscene. Therefore, because the most perverse and bizarre material would not "arouse" the average person, it would not be found obscene. We agree with the author of a prominent treatise on obscenity that the Supreme Court could not have intended such a result.
 
 
 47
 If "appeal" is used in the sense of "he has an appealing personality," then it is the effect that is determinative. Alternatively, "appeal " may refer merely to the intentions or focus of the publications. The latter is clearly what the Roth Court had in mind, and is the only one which is consistent with other concepts in obscenity law. The average person would probably find that most hard-core pornography has little effect on him, and it may well disgust him. Or he may find that it is so overdone as to have anything but a stimulative effect. It is apparent that neither the Supreme Court nor the legislatures intended that tasteful pornography be suppressed while distasteful pornography remains unregulated. Rather, the emphasis must be on the intent or aim of the publication as a whole. If this aim is to produce psychic or physical stimulation, on a less than intellectual plane, and on a short-term basis, then the prurient-interest aspect of the test for obscenity has been met.
 
 
 48
 F. Schauer, The Law of Obscenity 102 (1976) (emphasis added) (footnote omitted). We hold, therefore, that the jury must assess whether material "appeals to the prurient interest" by examining the nature or aim of the material itself. This is not a subjective determination that seeks to discern the intent of the manufacturer or distributor. Instead, the jury's focus should be the material's capacity to appeal to a shameful or morbid interest in sex.
 
 
 49
 Plaintiffs argue that the Arizona statute goes beyond Guglielmi because it reaches material that has no impact whatsoever on the average person; i.e. it does not arouse, disgust, offend, nor embarrass him. This argument is based on a misreading of the statute. The statute only states that the item need not be "successful in arousing or exciting any particular form of prurient interest." The term prurient interest as used in Roth refers to " 'a shameful or morbid interest in nudity, sex, or excretion.' " Brockett, 472 U.S. at 498, 105 S.Ct. at 2799 (quoting Model Penal Code Sec. 207.10(2) comment (Tent. Draft No. 6, 1957)). The Arizona statute thus only means that the actual arousal of shameful or morbid sexual responses is not required for a jury to find material obscene. It does require a determination that the material itself has that capacity.[10]
 
 
 50
 In addition to this overbreadth challenge, plaintiffs argue that the prurient appeal test is unconstitutionally vague. Plaintiffs claim that an item cannot appeal to the prurient interest of the average person if it fails to cause arousal or a response in that person. As discussed above, however, "appeal to the prurient interest" does not require an actual impact. The focus is instead on the nature of the material.
 
 2. "Shameful" or "Morbid" Response
 
 51
 Plaintiffs' second objection to the prurient appeal test is that it is vague and overbroad because it does not require the jury to find that the material appeals to a "shameful" or "morbid" interest. According to the Supreme Court in Brockett, 472 U.S. at 498-99, 105 S.Ct. at 2798-99, the "prurient interest" portion of the obscenity test is not satisfied if the jury merely finds that the materials would arouse normal sexual responses. Plaintiffs claim that the focus on "arousal" implies that an appeal to normal sexual response would be sufficient.
 
 
 52
 The statute nowhere states that "prurient appeal" means a normal interest in sex. Such an interpretation cannot fairly be implied from the language: "it is not necessary that the item be successful in arousing or exciting any particular form of prurient interest ..." Ariz.Rev.Stat. 13-3501(2)(a) (Supp.1987). Moreover, an obscenity statute need not define the word "prurient." Brockett, 491 U.S. at 505 n. 13, 105 S.Ct. at 2802 n. 13. Arizona case law has properly defined the term, however. In State v. Bartanen, 121 Ariz. 454, 591 P.2d 546, cert. denied sub nom. Bartanen v. Arizona, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979), the court upheld this jury instruction:
 
 
 53
 The term appeal to the prurient interest means to excite lustful thoughts, a shameful or morbid interest in sex or nudity, arouse sexual desires or sexually impure thoughts, inclined to or disposed to lewdness, having lustful ideas or desires.
 
 
 54
 ....
 
 
 55
 A prurient interest in sex is not the same as a candid, wholesome, or healthy interest in sex. Material does not appeal to the prurient interest just because it deals with sex or shows nude bodies. Prurient interest is an unhealthy, unwholesome, morbid, degrading or shameful interest in sex, a leering or longing interest.
 
 
 56
 Id. at 458, 591 P.2d at 550. We have approved the Bartanen instruction. See Polykoff, 816 F.2d at 1336. This instruction removes any possibility that the jury could find material obscene on the basis of an appeal to a normal sexual response.
 
 3. Jury's Personal Standards
 
 57
 Plaintiffs contend that the language that "it is not necessary that the item be successful in arousing [a] prurient interest" either in the average person, the probable recipient group, or in the trier of fact renders the statute vague and overbroad. The above language allegedly implies that the trier of fact is a permissible group by whose standards prurient appeal may be measured.
 
 
 58
 Plaintiffs concede that this issue was not raised in the district court. In general, we will not consider on appeal issues not raised below. Goldberg v. Weiner, 480 F.2d 1067, 1069 (9th Cir.1973). This is merely a rule of practice, however and "[r]elaxation of this rule is sometimes appropriate in appeals wherein there are significant questions of general impact or when injustice might otherwise result." Krause v. Sacramento Inn, 479 F.2d 988, 989 (9th Cir.1973). The instant case is an appropriate one for relaxation of the rule. Significant constitutional questions are involved. If plaintiffs are correct, delay in deciding the validity of the statute could unconstitutionally chill the exercise of first amendment rights. Also, because the issue is one of facial invalidity, a fully developed evidentiary basis is not required. Accord Rath Packing Co. v. Becker, 530 F.2d 1295, 1308 (9th Cir.1975), aff'd sub nom. Jones v. Rath Packing Co., 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).
 
 
 59
 Plaintiffs discuss at length the rule that jurors must apply average community standards, rather than their own, in determining whether material is obscene. See Hamling v. United States, 418 U.S. 87, 107, 94 S.Ct. 2887, 2902, 41 L.Ed.2d 590 (1974). The Arizona statute explicitly incorporates this requirement. For an item to be obscene, "[t]he average person, applying contemporary state standards,[11] would find that the item, taken as a whole, appeals to the prurient interest." Ariz.Rev.Stat. Sec. 13-3501(2)(a) (Supp.1987).
 
 
 60
 The language plaintiffs object to does not contravene this requirement. The statute specifically directs that obscene material need not be successful in arousing the prurient interest in the trier of fact. It does not state or imply that the trier of fact should apply his personal standards to the issue of prurient appeal. The statute is thus entirely consistent with Supreme Court case law approving the use of "[c]autionary instructions to avoid subjective personal and private views." Pinkus, 436 U.S. at 300, 98 S.Ct. at 1813.
 
 D. The Scienter Requirement
 
 61
 The Arizona statute provides that "a person is guilty of a class 5 felony who, with knowledge of the character of the item involved, knowingly" produces or distributes any obscene item. Ariz.Rev.Stat. Sec. 13-3502 (Supp.1987) (emphasis added). "Knowledge of the character" is defined as:
 
 
 62
 having general knowledge or awareness, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of that which is reasonably susceptible to examination by the defendant both:
 
 
 63
 (a) That the item contains, depicts or describes nudity, sexual activity, sexual conduct, sexual excitement or sadomasochistic abuse ... whether or not there is actual knowledge of the specific contents thereof.
 
 
 64
 Id. Sec. 13-3501(3)(a).[12] Plaintiffs argue that this definition is overbroad because it requires only a "suspicion" of one scene of sexual activity, rather than knowledge of the general nature and character of the material.[13]
 
 
 65
 The Supreme Court has issued guidelines on the requisite scienter in an obscenity statute. In Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), the Court struck down an ordinance imposing strict liability on a seller of obscene books. Id. at 152-55, 80 S.Ct. at 218-20. The court specifically declined to address the specific sort of mental element "requisite to a constitutionally permissible prosecution." Id. at 154, 80 S.Ct. at 219. In Hamling, the Court approved a jury instruction requiring only knowledge of the "character" of the material, and not of its specific contents. Hamling, 418 U.S. at 119-20, 94 S.Ct. at 2908-09; see also Mishkin v. New York, 383 U.S. 502, 510, 86 S.Ct. 958, 964, 16 L.Ed.2d 56 (1966) (approving jury instruction requiring awareness of character of material). The precise issue presented here is whether the Arizona statute requires the jury to find that the defendant knew of the "character or nature" of the material, or whether the jury need only find a "suspicion" of one scene of nudity or sexual activity. The Sixth Circuit recently considered a Michigan statute containing a scienter requirement virtually identical to Arizona's.[14] In 511 Detroit St., Inc. v. Kelley, 807 F.2d 1293 (6th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987), the court stated that the statute seemed to set up a presumption that "one who knows or is aware that material depicts or describes sexual conduct is also aware of the nature and character of the entire item." Id. at 1298. Such a presumption would require a bookseller to examine personally any book he had reason to believe contained sexual conduct to determine if it was obscene. Id. The court, however, declined to declare the statute unconstitutional because it might benefit from a narrowing state court interpretation. Id.
 
 
 66
 We share the Sixth Circuit's concern. Like the statute in 511 Detroit St., the Arizona statute may allow conviction of one who knows (or should know) that material contains limited nudity or sexual activity, but does not know that the general nature or character of the item could render it obscene. The scienter provision thus unduly chills the exercise of protected expression. We find that it is unconstitutionally overbroad.
 
 
 67
 We do not, however, follow the Sixth Circuit's approach by abstaining under Pullman pending a narrowing construction by the Arizona courts. First amendment cases are generally not appropriate cases for abstention under the law of this circuit. See Polykoff, 816 F.2d at 1334; J-R Distributors, 725 F.2d at 488. Further, the state argues the section is valid on its face and does not urge a limiting construction. Cf. Erznoznik v. City of Jacksonville, 422 U.S. 205, 217, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975) (where government justifies ordinance in its broadest terms, there is no reason to assume ordinance can or will be narrowed). Finally, the language of the definition does not seem readily susceptible to a narrowing construction. It would be necessary to add language requiring that the defendant have knowledge of the "overall character" of the material, rather than just of one scene of nudity, or to strike the definition altogether.
 
 
 68
 We also do not find it necessary to invalidate the statute on its face on overbreadth grounds. As a rule, "a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it." Brockett, 472 U.S. at 502, 105 S.Ct. at 2801. Facial invalidation is appropriate where an individual whose speech may validly be prohibited challenges a statute because it threatens others not before the court. The law may not be enforced against anyone if the overbreadth is "substantial." Id. at 503, 105 S.Ct. at 2801. Here, as in Brockett, the parties challenging the statute themselves wish to engage in protected speech that the overbroad statute purportedly punishes. Thus, the normal rule of partial invalidation applies. Id. at 504, 105 S.Ct. at 2802.
 
 
 69
 Instead, we invalidate the statute in part by striking the challenged definition.[15] Cf. id. at 505, 105 S.Ct. at 2802 (suggesting that appellate court could have stricken objectionable word "lust"). The undefined requirement that the defendant have knowledge of the "character" of the item withstands scrutiny under Hamling. Such partial invalidation would not be appropriate if the section does not meet Arizona's severability test. The test for severability in Arizona[16] is thatthe valid portion of an enactment must be independent of the invalid portion and must form a complete act within itself. The law enforced after separation must be reasonable in light of the act as originally drafted. The test is whether or not the legislature would have passed the statute had it been presented with the invalid features removed.
 
 
 70
 State v. Watson, 120 Ariz. 441, 445, 586 P.2d 1253, 1257 (1978) (quoting Millett v. Frohmiller, 66 Ariz. 339, 342-43, 188 P.2d 457, 460 (1948)), cert. denied, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979). The definition is, however, sufficiently independent of the remainder of the statute and presumably the Arizona legislature would have enacted the law without it.
 
 E. Attorney's Fees
 
 71
 Plaintiffs claim attorney's fees on appeal pursuant to 42 U.S.C. Sec. 1988. In a stipulation filed in the district court July 14, 1987, the parties agreed: "Neither party will claim costs or attorney's fees from the other." This claim is thus barred by stipulation.
 
 IV.
 CONCLUSION
 
 72
 We apply a rational basis test to our review of the exemption of cable television from the Arizona obscenity statute because the statute regulates only unprotected speech. We can conceive of rational grounds for the exemption and it thus does not violate the equal protection clause.
 
 
 73
 The "prurient appeal" test in the Arizona statute is not unconstitutionally overbroad or vague. We follow the Fourth Circuit's approach in Guglielmi and find that obscene material need not arouse a sexual interest in the average person. The Arizona "prurient appeal" test does not allow a jury to find material obscene that appeals to normal sexual responses nor does the test allow the jury to judge material by its personal standards.
 
 
 74
 The statute's scienter requirement is unconstitutional under Hamling because it suggests that one who knows the material depicts sexual conduct is aware of the nature and character of the entire item. We strike the definition of "knowledge of character." Undefined, the scienter requirement withstands constitutional scrutiny.
 
 
 75
 For these reasons, the district court's grant of summary judgment is AFFIRMED in part and REVERSED in part.
 
 
 
 *
 Hon. Albert Lee Stephens, Jr., United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 This change is significant because under Arizona law, a defendant with no prior record, convicted of two felony counts, must be treated as a repetitive offender and must be sent to prison. See State v. Hannah, 126 Ariz. 575, 577, 617 P.2d 527, 529 (1980); Ariz.Rev.Stat. Sec. 13-604(A), (H) (1978). In the case of a class 6 offense, the trial judge can avoid mandatory prison by declaring one offense a misdemeanor. Ariz.Rev.Stat. Sec. 13-604(H) (1978). The judge does not have this option when the defendant is charged with two class 5 felony counts
 
 
 [2]
 The Declaratory Judgment Act also requires an "actual controversy." 28 U.S.C. Sec. 2201
 
 
 [3]
 The courts have addressed the question of whether future injury is sufficient as an issue of standing, ripeness, and/or justiciability. Compare Polykoff, 816 F.2d at 1331 and Heller v. Bushey, 759 F.2d 1371, 1373 (9th Cir.1985) (standing), rev'd on other grounds sub nom. Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam) with Ohio Civil Rights Comm'n, 477 U.S. at 625 n. 1, 106 S.Ct. at 2722 n. 1 (ripeness) and Miller v. Washington State Bar Ass'n, 679 F.2d 1313, 1314 (9th Cir.1982) (justiciability)
 
 
 [4]
 To strike down a statute for overbreadth, this court must first find that the alleged overbreadth is both real and substantial. Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). This question is not one of standing, however, and is properly reserved for the merits. NAACP v. City of Richmond, 743 F.2d 1346, 1352 (9th Cir.1984)
 
 
 [5]
 This case is also not appropriate for application of the other traditional grounds for abstention. Under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), abstention may be appropriate when a federal suit seeks to enjoin a pending or ongoing state proceeding. The plaintiffs in this action are not the same parties facing criminal prosecution in the Arizona state courts. Plaintiffs seek only to enjoin future criminal proceedings against themselves. Ordinarily, the state defendant's inability to bring a federal action because of a pending state prosecution does not affect other potential federal plaintiffs who are not themselves the subject of pending prosecutions. See Doran v. Salem Inn, Inc., 422 U.S. 922, 928-30, 95 S.Ct. 2561, 2566-67, 45 L.Ed.2d 648 (1975)
 Neither does this case implicate the abstention doctrine of Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Under Burford, federal courts may decline to exercise jurisdiction when the case involves "an essentially local issue arising out of a complicated state regulatory scheme." International Bhd. of Elec. Workers, Local Union No. 1245 v. Public Serv. Comm'n, 614 F.2d 206, 211 (9th Cir.1980). A case involving a first amendment challenge to a state statute is unlikely to implicate purely local issues that the state courts may be especially competent to deal with. J-R Distributors, 725 F.2d at 488 n. 6.
 Finally, this case does not fall within the narrow Colorado River doctrine. This doctrine permits dismissal in exceptional circumstances based on considerations of wise judicial administration. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18, 96 S.Ct. 1236, 1246-47, 47 L.Ed.2d 483 (1976). The relevant factors under the "exceptional circumstances" test are: the assumption by either court of jurisdiction over any res or property, a contention that the federal forum is less convenient, the danger of piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983). None of these exceptional circumstances are present here. Accord Polykoff, 816 F.2d at 1334.
 
 
 [6]
 Plaintiffs argued below that the exemption for FCC-licensed broadcasts was also unconstitutional. Plaintiffs concede on appeal that this exemption is arguably legitimate but contend that the cable television exemption (i.e. the exemption for activities licensed under Title 9) cannot withstand equal protection analysis
 
 
 [7]
 A third category of cases applies strict scrutiny but only when the statute regulates speech other than that defined as obscene. See Salem Inn, Inc. v. Frank, 522 F.2d 1045, 1049 (2d Cir.1975) (topless dancing); Cruz v. Ferre, 571 F.Supp. 125, 134 (S.D.Fla.1983) (statute applied to "indecent" as well as "obscene" speech), aff'd, 755 F.2d 1415 (11th Cir.1985); Tattered Cover, Inc. v. Tooley, 696 P.2d 780, 785-86 (Colo.1985) (statute regulating display of sexually explicit materials to children). Upper Midwest and Webb could fall into this category because the ordinances at issue regulated "sexually explicit" material, rather than "obscenity" as defined in Miller v. California. Neither case, however, is written so narrowly
 
 
 [8]
 Although not written narrowly, Upper Midwest and Webb are similarly distinguishable. In both cases, the ordinances regulated "sexually explicit" material, rather than "obscenity" as defined in Miller v. California
 
 
 [9]
 Although plaintiffs do not specifically use the term, this seems to be an overbreadth argument because plaintiffs claim constitutionally protected expression is wrongly criminalized by the statute. See Taxpayers for Vincent, 466 U.S. at 798, 104 S.Ct. at 2125
 
 
 [10]
 Because the statute only states that obscene material need not arouse a prurient interest, we express no opinion on whether a state legislature could label material obscene that has no effect or impact whatsoever on the average person
 
 
 [11]
 Under Miller, obscenity must be judged by "contemporary community standards." 413 U.S. at 24, 93 S.Ct. at 2615. The Miller Court approved an instruction charging the jury to apply "contemporary community standards of the State of California." Id. at 31, 93 S.Ct. at 2618 (emphasis added). Miller allowed instructions referring to a hypothetical statewide community but did not mandate their use. See Jenkins v. Georgia, 418 U.S. 153, 157, 94 S.Ct. 2750, 2753, 41 L.Ed.2d 642 (1974). The states thus have considerable latitude in framing statutes under the "community standards" element of the Miller decision. Id
 
 
 [12]
 This definition was added in 1986. The former version of the statute defined "knowingly" as having "general knowledge of ... [t]he character and content " of the material. Ariz.Rev.Stat. Sec. 13-3501(4)(a) (1978) (emphasis added). This provision was upheld against constitutional challenge in Dugal v. Hyder, 467 F.Supp. 1119, 1120-21 (D.Ariz.1979), vacated mem. 647 F.2d 170 (9th Cir.1981)
 
 
 [13]
 Plaintiffs also argued below that the statute was infirm because it failed to require proof of knowledge of "contents." Plaintiffs have dropped this argument on appeal
 
 
 [14]
 The Michigan statute defined knowledge of "the content and character of the material" as:
 having general knowledge or reason to know, or a belief or ground for belief which warrants further inspection or inquiry, of the nature and character of the material involved. A person has such knowledge when he or she knows or is aware that the material contains, depicts, or describes sexual conduct whether or not such person has precise knowledge of the specific contents of the material.
 Mich.Comp.Laws Sec. 752.362(3) (Supp.1988) (emphasis added).
 
 
 [15]
 The challenged definition is contained in the introductory paragraph of section 13-3501(3) and in subsection 13-3501(3)(a). Subsection 13-3501(3)(b) cannot stand alone. We therefore strike section 13-3501(3) in its entirety
 
 
 [16]
 The question of severability of a state statute is one of state law. Brockett, 472 U.S. at 506, 105 S.Ct. at 2803. The Arizona standard is, however, very similar to that which the courts apply in determining the severability of a federal statute. The invalid portions of a federal statute are to be severed unless it is evident that the legislature would not have enacted the remainder of the statute without the invalid provisions. See INS v. Chadha, 462 U.S. 919, 931-32, 103 S.Ct. 2764, 2773-74, 77 L.Ed.2d 317 (1983). Further, a provision is presumed severable if what remains is " 'fully operative as a law.' " Id. at 934, 103 S.Ct. at 2775 (quoting Champlin Refining Co. v. Corporation Comm'n, 286 U.S. 210, 234, 52 S.Ct. 559, 564, 76 L.Ed. 1062 (1932))