895 F.2d 604
 Michelle COAKLEY and Lydia Q. Rillo, individually and on
behalf of all other persons similarly situated,
Plaintiffs-Appellants,
Margaret Soucy and Sandra Sumailo, Plaintiffs/Intervenors-Appellants,
v.
Franklin SUNN, individually and in his official capacity as
Director of the Department of Social Services and
Housing, State of Hawaii, Defendant and
Third Party Plaintiff-Appellee,
v.
Louis W. SULLIVAN*, Secretary of Health and
Human Services, Third Party Defendant-Appellee.
 No. 88-1676.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 18, 1988.
Decided Feb. 5, 1990.
 
 John Ishihara, Legal Aid Soc. of Hawaii, Honolulu, Hawaii, for plaintiffs-appellants.
 Steven S. Michaels and Susan M.U. Wong, Deputy Attys. Gen., Honolulu, Hawaii, for defendant and third-party plaintiff-appellee.
 Richard K. Waterman, Regional Chief Counsel, Dept. of Health and Human Services, San Francisco, Cal., for third-party defendant-appellee.
 Appeal from the United States District Court for the District of Hawaii.
 Before CHAMBERS, O'SCANNLAIN and TROTT, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 Recipients of food stamps and aid to families with dependent children ("AFDC") challenge a State of Hawaii interpretation of the federal so-called "lump sum" rule which provides that AFDC recipients whose income temporarily exceeds a certain level become ineligible to receive benefits for a fixed period of time.I
 
 
 2
 Rillo, an AFDC recipient, was awarded $18,500 in the settlement of a personal injury claim, of which she received more than $11,000. The Hawaii Department of Social Services and Housing ("DSSH"), which administers AFDC for the state, categorizes such personal injury damage awards as "income" under the federal lump sum rule.[1] 42 U.S.C. Sec. 602(a)(17)(Supp. V 1987). The rule provides that an AFDC recipient who receives a lump sum of income becomes ineligible for benefits for as many months as the income would last if the recipient were to spend an amount equal to the state's standard of need each month. Id. Therefore, Hawaii disqualified Rillo and her family from receiving AFDC benefits for 21 months, a period it calculated by dividing Rillo's damages award by her monthly AFDC assistance payment of $468.00. Rillo placed her personal injury award into a bank account.
 
 
 3
 Rillo also had been receiving some $281.00 a month of food stamps prior to her personal injury settlement. As a result of her depositing the award, however, Rillo's bank balance exceeded the food stamp eligibility resource level of $2000;[2] therefore, DSSH terminated her benefits under that program as well. Because she had lost her food stamp eligibility, Rillo had to spend some of her lump sum to purchase food. Consequently, Rillo depleted the lump sum prior to the conclusion of her lump sum ineligibility period.[3]
 
 
 4
 In October 1985, Rillo (and Coakley) filed this class action suit in the district court against DSSH Director Sunn ("the Director") based on federal question jurisdiction. 28 U.S.C. Sec. 1331 (1982). The original complaint contains three claims: (1) that the Director's policy of treating personal injury awards as "income" under AFDC violates certain provisions of the Social Security Act ("the Act"), 42 U.S.C. Secs. 602(a)(7), 602(a)(10) and 602(a)(17) (Supp. V 1987); (2) that this same policy violates the equal protection clause of the fourteenth amendment; and (3) that the Director's failure to notify appellants of the policy's impact on AFDC eligibility prior to their receiving personal injury awards was improper. In turn, the Director filed a third party complaint against the U.S. Secretary of Health and Human Services ("the Secretary"). The district court certified a class action, but granted summary judgment upholding the validity of the Director's actions as to the first two of appellants' claims, leaving the third claim relating to "notice" undecided ("the notice claim"). The court also denied the plaintiffs' motion for a preliminary injunction. None of these court rulings is before us.
 
 
 5
 Appellants then filed an amended complaint alleging a fourth claim ("the unavailability claim") that the Director has "unduly limited the scope" of the so-called "unavailability rule," a federal statutory provision which permits states to recalculate an AFDC recipient's period of ineligibility if the recipient's lump sum income becomes "unavailable." The unavailability rule provides that "the State may at its option recalculate the period of ineligibility ... [if] the income received has become unavailable to the members of the family for reasons that were beyond the control of such members ..." 42 U.S.C. Sec. 602(a)(17).[4]
 
 
 6
 Currently, DSSH shortens an AFDC recipient's ineligibility period under the lump sum rule when, among other things, the income becomes unavailable either because of loss or theft or because the individual with control over the income leaves the home. Haw.Admin. Rule Sec. 17-621-46(e)(1) (1984).[5] Appellants claim that Hawaii's failure to include them within its "unavailability rule" violates federal law because a portion of their lump sum income has become "unavailable" due to circumstances beyond their control for other reasons. Appellants asked the court in their fourth claim to declare the Director's interpretation of the "unavailability rule" unconstitutional under the due process clause of the fourteenth amendment as well as violative of the federal statute and regulation whence it derived. The Director did not assert a third party claim against the Secretary as to this fourth claim.
 
 
 7
 The district court eventually dismissed the "notice" claims with prejudice, certified a class with respect to the unavailability claims,[6] and then dismissed the unavailability claims, again upholding the validity of the Director's action. Appellants timely appeal the adverse judgment on their "unavailability" claim.
 
 II
 
 8
 Article III of the United States Constitution limits our jurisdiction to actions involving actual "cases" or "controversies," a limitation that manifests itself through the doctrine of standing. Secretary of State v. Joseph H. Munson Co., 467 U.S. 947, 954, 104 S.Ct. 2839, 2845, 81 L.Ed.2d 786 (1984); Ripplinger v. Collins, 868 F.2d 1043, 1047 (9th Cir.1989). In order to establish standing to pursue a claim under Article III,[7] a plaintiff must allege personal injury that is fairly traceable to defendant's allegedly unlawful conduct and that the requested relief is likely to redress. Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)); Ripplinger, 868 F.2d at 1047. That is, the litigant must allege a distinct and palpable injury to himself; that the injury is somehow directly linked to the challenged activity; and that the injury is one which is apt to be redressed by a remedy the court is prepared to give. See Allen, 468 U.S. at 751, 104 S.Ct. at 3324; see also Wright, Miller, & Cooper, 13 Federal Practice and Procedure, Sec. 3531.4, at 418.
 
 
 9
 Appellants clearly satisfy the first two elements of the Article III standing inquiry with respect to their unavailability claim. First, they have adequately alleged injury through the loss of their AFDC benefits for the full duration of the lump sum ineligibility period. Second, this loss was occasioned at least in part by the Director's decision not to extend the "unavailability rule" to allow for recalculation in situations like theirs.
 
 
 10
 We now turn to redressability, and begin by examining the precise contours of the alleged injury for which appellants desire redress to determine whether it can be alleviated by the kind of relief they seek. The precise injury of which appellants complain is their exclusion from Hawaii's unavailability exception. Appellants' prayer for relief seeks a declaration that the Director's interpretation of the unavailability exception to the operation of the federal lump sum statute and regulation violates the fourteenth amendment due process clause as well as the federal statute and regulation.[8]
 
 
 11
 But even were we to issue an order declaring the Hawaii regulation invalid under federal law, it would not redress the injury from which appellants allegedly are suffering. See Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 45, 96 S.Ct. 1917, 1927, 48 L.Ed.2d 450 (1976) (Court concluding that plaintiffs lacked standing in part because their complaint "suggests no substantial likelihood that victory in this suit would result in [their] receiving the hospital treatment they desire"). Striking down the Hawaii rule would merely result in the denial of the exception's application to those who currently receive it; i.e., those who lost their lump sums due to theft or walk-out. The position of appellants would be unchanged, however, for this case certainly is not an appropriate one for us to compel the state to extend a benefit to an excluded class. See, e.g., Welsh v. United States, 398 U.S. 333, 361, 90 S.Ct. 1792, 1807, 26 L.Ed.2d 308 (1970) (Harlan, J., concurring); Hays v. Potlatch Forests, 465 F.2d 1081, 1083 (8th Cir.1972). After all, the governing federal statute does not obligate a State participating in the AFDC program to provide for any exceptions to the ineligibility period mandate of the lump sum rule. 42 U.S.C. Sec. 602(a)(17)(B)(ii) (1982 & Supp. I (1983)).[9]
 
 
 12
 In certain circumstances, even when the court is not prepared to order an extension of benefits, plaintiffs who allege that a statute is underinclusive nonetheless shall be considered to have an injury for which they can obtain redress. See, e.g., Heckler v. Mathews, 465 U.S. 728, 739 & n. 6, 104 S.Ct. 1387, 1395 & n. 6, 79 L.Ed.2d 646 (1984); Ripplinger, 868 F.2d at 1048. Otherwise, underinclusive statutes effectively would be insulated from constitutional scrutiny. Ripplinger, 868 F.2d at 1048 (citing Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S.Ct. 1722, 1726, 95 L.Ed.2d 209 (1987)). In Mathews for example, the Court held that a plaintiff who asserted the right to be free from discriminatory treatment under the equal protection clause--as opposed to a substantive right to any particular amount of benefits--had standing. Mathews, 465 U.S. at 737, 104 S.Ct. at 1394. "[W]hen the 'right invoked is that to equal treatment,' the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." Id. at 740, 104 S.Ct. at 1395 (citing Justice Brandeis's opinion in Iowa-Des Moines Nat'l Bank v. Bennett, 284 U.S. 239, 247, 52 S.Ct. 133, 136, 76 L.Ed. 265 (1931) (emphasis in original) (footnote omitted)). See also Arkansas Writers' Project, 107 S.Ct. at 1726 (in "numerous decisions," Court has "considered claims that others similarly situated were exempt from the operation of a state law adversely affecting the claimant"), and cases cited therein.
 
 
 13
 Here, however, appellants have not maintained a right to equal treatment under the federal program based on alleged discrimination against their class. That is, appellants have not asked this court to strike down the Hawaii rule to end allegedly preferential treatment others similarly situated are receiving. As noted above, they have only asked us to declare that the rule violates the federal statute. Therefore, even were we to proceed to the merits[10] and conceivably rule in favor of appellants, their injury is not one which can be redressed by a remedy we are able to provide. As a consequence, appellants have failed to satisfy the Article III standing requirement of redressability.[11]
 
 III
 
 14
 Because we conclude that plaintiffs lack standing, we vacate the district court's summary judgment in favor of DSSH and remand this case to the district court with instructions to dismiss the action without prejudice.
 
 
 15
 VACATED with instructions to DISMISS.
 
 
 
 *
 Louis W. Sullivan is substituted for his predecessor, Margaret Heckler, as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1)
 
 
 [1]
 The Supreme Court recently upheld Virginia's similar treatment of personal injury damages in Lukhard v. Reed, 481 U.S. 368, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987)
 
 
 [2]
 "The Secretary shall ... assure that a household otherwise eligible to participate in the food stamp program will not be eligible to participate if its resources exceed $2,000...." 7 U.S.C. Sec. 2014(g) (Supp. IV 1986)
 
 
 [3]
 Plaintiff's complaint, which she filed on October 4, 1985, states that she "no longer has any of the settlement left to support herself and her family." Rillo's ineligibility period extended until June 1986
 
 
 [4]
 The federal regulation HHS promulgated in accordance with the statute is virtually identical to it. It provides that "[a] State may shorten the remaining period of ineligibility when ... the lump sum income or a portion thereof becomes unavailable to the family for a reason beyond the control of the family...." 45 CFR Sec. 233.20(a)(3)(ii)(F) (1988)
 
 
 [5]
 The full text of the rule provides:
 The department shall shorten the remaining period of ineligibility [caused by operation of the lump sum rule] when:
 (1) The lump sum income or a portion thereof becomes unavailable to the family due to:
 (A) A loss or theft which shall be verified by the police or other law enforcement officials. If the individual or family recovers the total or a portion of the total lump sum income, the department shall consider that amount a lump sum income and shall budget that amount as provided in subsection (d); or
 (B) The individual with control over the lump sum income leaves the home with the total or a portion of the lump sum income:
 (i) The individual who left the family shall remain ineligible during the period of ineligibility; and
 (ii) If the individual returns to the family during the period of ineligibility, the department shall reinstate the period of ineligibility effective the month the individual returned to the family....
 Haw.Admin.R. Sec. 17-621-46(e) (1984).
 
 
 [6]
 This subclass consists of "all AFDC families whose benefits have been or will be terminated pursuant to [the lump sum rule] and whose food stamps will be terminated because they are over the food stamp retention limit."
 
 
 [7]
 We recognize that standing doctrine also takes into account certain extra-constitutional considerations based on prudential concerns, but they are not at issue in the case before us. See Ripplinger, 868 F.2d at 1047-48
 
 
 [8]
 Appellants did not appeal from the district court's decision regarding the constitutionality of the Director's interpretation under the due process clause
 
 
 [9]
 Appellants argue that just because exceptions are undertaken completely at the discretion of the state does not mean that once Hawaii has chosen to allow for certain exceptions, it does not have to abide by the federal statute. We agree. But this argument only goes to whether the federal statute has been violated, not to whether we can redress appellants' injury
 
 
 [10]
 Though we express no view on the merits of the legal claim before us, we nonetheless feel compelled to comment briefly on appellants' situation
 As counsel for HHS explained, a "very real problem" exists for this class of plaintiffs because of the disparate treatment certain assets receive under the AFDC and food stamps programs. In addition, the Director has "agree[d] that the situation complained of by [appellants] is unfair and should be corrected." Coakley v. Sunn, No. 85-1233 (D.Haw. Sept. 17, 1987) (order on motions for class certifications and summary judgment). Indeed, even the Secretaries charged with administration of the respective programs (HHS for AFDC, USDA for food stamps) have recognized the inconsistency in the respective programs, only to conclude that they could not remedy the situation because of statutory constraints. 52 Fed.Reg. 36546, 36556 (Sept. 29, 1987). With all the relevant parties in agreement that the current system works an inequitable hardship on the class before us, we do not hesitate to express our hope that they can cooperate to ensure that the two programs work in tandem, rather than at cross-purposes. Failing that, Congress certainly can be invited to consider amending the statutes.
 
 
 [11]
 We deny appellants' motion to supplement the record on appeal on grounds of mootness in light of our opinion. To the extent that the Tennessee experience may offer an additional opportunity for cooperation in the spirit of footnote 10 supra, we cordially invite the parties to negotiate a settlement with respect to the merits which, of course, we do not reach