Maria–Kelly F. YNIGUEZ and Jaime P. Gutierrez, Plaintiffs,

v.

Rose MOFFORD, individually and as Governor of the State of Arizona, Robert K. Corbin, individually and as Attorney General of the State of Arizona, and Catherine Eden, individually and as Director of the Department of Administration of the State of Arizona, Defendants.

No. CIV 88–1854 PHX PGR.

United States District Court, D. Arizona.

Feb. 6, 1990.

Denying amendment, —— F.Supp. ——.

Robert J. Pohlman, Phoenix, Ariz., for plaintiffs.

Anthony B. Ching, Sol. Gen., Phoenix, Ariz., for defendants.

## MEMORANDUM OPINION AND ORDER

ROSENBLATT, District Judge.

As a result of a general election held on November 8, 1988, Article XXVIII, entitled "English as the Official Language", was added to the Arizona Constitution. In an action brought pursuant to 42 U.S.C. § 1983, the plaintiffs seek to have Article XXVIII declared unconstitutional and its enforcement enjoined, claiming that the Article violates the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 2000d, et seq., Title VI of the Civil Rights Act of 1964. Article XXVIII, which formally went into effect on December 5, 1988, provides in part that English shall be the official language of the State of Arizona and all of its political subdivisions, that the Article is applicable to all branches of government and to all government officials and employees during the performance of government business, that the state and its political subdivisions shall take all reasonable steps to preserve, protect and enhance the role of English as the state's official language, that the state and its political subdivisions, with some limited exceptions, shall act only in English, and that private citizens shall have standing to bring suit to enforce the Article.

This action, which names as defendants, both individually and in their official capacities, Rose Mofford, Governor of the State of Arizona, Robert Corbin, Attorney General of the State of Arizona, and Catherine Eden, Director of the Department of Administration of the State of Arizona, was commenced on November 10, 1988 by Maria–Kelly Yniguez; Jaime Gutierrez was added as a plaintiff in a second amended complaint. Both plaintiffs are of Hispanic descent and are fluent in English and Spanish. Yniguez, who is employed by the Risk Management Division of the Arizona Department of Administration as an insurance claims manager, often spoke Spanish prior to the enactment of Article XXVIII with Spanish-speaking persons who were asserting medical malpractice claims against the state. Yniguez ceased speaking Spanish while performing her official duties immediately after Article XXVIII was passed because it was her interpretation of the Article that she could be sanctioned if she continued to speak Spanish. Gutierrez, an Arizona state senator, spoke Spanish prior to the enactment of Article XXVIII when communicating with his Spanish-speaking constituents and continues to do so. Both plaintiffs have signed state loyalty oaths promising to obey the Arizona Constitution.

The defendants have filed a motion seeking the dismissal of Yniguez's claims, which the court has treated as a motion for summary judgment, and a separate motion seeking the dismissal of Gutierrez's claims. The plaintiffs have filed a motion seeking a preliminary injunction. Pursuant to the stipulation of the parties, the trial on the merits was combined with the evidentiary hearing on the motion for preliminary injunction. For the reasons set forth herein, the court finds that the only appropriate parties to this action are Yniguez and Mofford and that Yniguez is entitled to have a judgment issued declaring Article XXVIII unconstitutional as facially overbroad in violation of the First Amendment.

### Eleventh Amendment

Yniguez's original complaint only named the State of Arizona as a defendant. On

the same day the state filed a motion seeking its dismissal on Eleventh Amendment grounds, Yniguez filed an amended complaint adding defendants Mofford, Corbin and Eden. The court subsequently dismissed the State of Arizona as a defendant but denied the Eleventh Amendment defense as to the individual defendants in what was specifically described as a preliminary ruling. While they did not specifically reassert the Eleventh Amendment defense in their pending motion to dismiss Yniguez's claims, the defendants did raise it in connection with their motion to dismiss Gutierrez's claims.

 The defendants argue that they cannot be subjected to Gutierrez's suit due to the bar of the Eleventh Amendment. Although Eleventh Amendment immunity extends to actions against state officers sued in their official capacities since such actions are in effect brought against the state, *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir.1982), suits for declaratory and injunctive relief, such as the instant action, against state officers in their official capacities are not barred by the Eleventh Amendment if those officers have some connection to the enforcement of the allegedly unconstitutional state law, which connection may arise from either the specific law itself or from the state's general law. *Ex parte Young*, 209 U.S. 123, 157, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). As state executive branch officials with no power to enforce Article XXVIII vis-a-vis Gutierrez, an elected official of the state legislative branch, neither Mofford, Corbin or Eden possess the enforcement connection required under the *Young* doctrine. Neither Article XXVIII nor any state law or regulation gives the named defendants, by virtue of their offices, any authority to force a state legislator to comply with Article XXVIII or to subject a state legislator to any type of sanction should he or she fail to comply with it. Gutierrez's claims against Mofford, Corbin and Eden are therefore barred by the Eleventh Amendment.

 The situation is different with respect to Yniguez's claims in that the court now concludes that Mofford and Eden, by virtue of their respective offices of Governor and Director of the Department of Administration, have a sufficiently direct connection with the enforcement of Article XXVIII as far as Yniguez is concerned to be appropriate defendants under the *Ex parte Young* doctrine, but that Corbin does not. Both Mofford and Eden possess the authority to enforce Article XXVIII against state service employees, such as Yniguez, since such employees are subject to discipline or dismissal if they fail to comply with state laws and rules. A.R.S. § 41–770 (1985); A.C.R.R. R2–5–501 (1986). Mofford's authority in this regard derives from her constitutional duty to take care that laws are faithfully executed, Ariz. Const. art. V, § 4, and her statutory duty to supervise the official conduct of all executive and ministerial officers, A.R.S. § 41–101(A)(1) (1985); Eden's authority stems from her statutory responsibility to direct and control the state personnel administration program. A.R.S. §§ 41–761 (1985), 41–763(2) (1985).

Defendant Corbin, on the other hand, has no authority simply by virtue as his position as state attorney general to force a state service employee such as Yniguez to comply with Article XXVIII. Under Arizona law, the attorney general law has no common law powers, only statutory powers. *Arizona State Land Dept. v. McFate*, 87 Ariz. 139, 142, 348 P.2d 912, 914 (1960). The fact that the state attorney general's office has the authority pursuant to A.R.S. § 41–193(A)(2) (1985) to "prosecute ... any proceeding in a state court other than the supreme court in which the state or an officer thereof is a party or has an interest" does not in and of itself make Corbin an appropriate party defendant under the *Young* decision since this provision does not permit the attorney general to initiate an original proceeding absent specific statutory power. *McFate*, 87 Ariz. at 145, 348 P.2d at 916. Article XXVIII does not specifically give the Arizona Attorney General any power to initiate an action to enforce its dictates; section 4 of the Article, the section entitled "Enforcement; Standing", only refers to enforcement suits by private

citizens. Nor does the state's general law accord Corbin any authority to prosecute an action against a state employee who fails to comply with a law such as Article XXVIII. The Eleventh Amendment therefore bars Yniguez's suit against Corbin.

*Case or Controversy*

The defendants have challenged the propriety of this action in part on the basis that no actual case or controversy exists as required by Article III of the United States Constitution. The inquiry into standing involves both constitutional limitations on this court's jurisdiction and prudential limitations on the exercise of that jurisdiction. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). The constitutional limitations on standing, which are derived from Article III's case or controversy requirement, limit access to federal courts to plaintiffs who can show that they personally have suffered some actual or threatened injury as a result of the allegedly wrongful action of the defendant and that injury fairly can be traced to the challenged action and is likely to be redressed by the requested relief. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The court finds that Yniguez has met these requirements sufficiently to establish that she has standing to prosecute this action; for that reason, and due to its finding above on the *Ex parte Young* issue, the court will not separately consider the issue of Gutierrez's standing. *Hanson v. Veterans Admin.,* 800 F.2d 1381, 1386 (5th Cir.1986).

The defendants' assertion that a case or controversy is lacking is derived primarily from what they perceive as the conjectural and hypothetical and self-imposed nature of the injury Yniguez alleges she has suffered and is continuing to suffer from as a result of the enactment of Article XXVIII. It is the defendants' position that the existence of Article XXVIII does not constitute a justiciable threat because Attorney General Corbin has formally interpreted Article XXVIII as not imposing any restrictions on Yniguez's continued use of Spanish during the course of her official duties and the defendants have stated on the record that Yniguez may continue to speak Spanish without fear of official retribution, and because the possibility of her being sued by a private citizen under the private right of action provision of Article XXVIII is too remote and speculative to constitute an actual injury.

The court finds that Yniguez has met the requirement of an injury in fact to the extent that she asserts an injury resulting from Governor Mofford's official actions. As a state government employee within the meaning of Article XXVIII who desires to speak a language other than English during the performance of her official duties, Yniguez is an individual to whom the Article's prohibitions are specifically directed and, if her interpretation of Article XXVIII is correct, is an individual against whom sanctions could be applied, whether by some form of disciplinary action or by suits by private parties, for her continued use of the Spanish language during the course of her employment. The mere fact that no enforcement action of any sort has as yet been threatened against Yniguez, other than what can be inferred from the stipulated facts that Mofford has officially stated that she intends to comply with Article XXVIII and expects state service employees, of which Yniguez is one, to comply with Article XXVIII, does not make Yniguez's injury hypothetical given the immediacy of the effect of Article XXVIII's alleged chilling nature. *Ripplinger v. Collins,* 868 F.2d 1043, 1047 (9th Cir.1989). Nor is Yniguez's injury any less actual because her decision to cease speaking Spanish in connection with her employment is self-imposed. As the Supreme Court has noted, the danger associated with laws which limit First Amendment rights is to a large extent one of self-censorship, which is a harm that can be realized even without an actual enforcement action. *Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 393, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988).

The court's finding that Yniguez possesses the requisite standing is a limited one

because there is no evidence of record to establish that Yniguez's asserted injury is anything except purely conjectural and hypothetical to the extent that it stems from any private actions of the defendants. For that reason, the court concludes that no case or controversy exists sufficient to subject any of the defendants to this action in their individual capacities.

Furthermore, while Mofford's stated intention to enforce Article XXVIII establishes the requisite connection between her and Yniguez's alleged injury, *see NAACP v. California,* 511 F.Supp. 1244, 1261–62 (E.D.Cal.1981), *aff'd,* 711 F.2d 121 (9th Cir. 1983); *Shell Oil Co. v. Noel,* 608 F.2d 208, 213 (1st Cir.1979), no such causal nexus exists between defendant Corbin's position as state attorney general and Yniguez's asserted injury. Corbin's lack of statutory authority over the enforcement of Article XXVIII not only requires his dismissal from this action under the *Ex parte Young* doctrine, but also under Article III because no injury cited by Yniguez is fairly traceable to any action by him. *Southern Pacific Transp. Co. v. Brown,* 651 F.2d 613, 615 (9th Cir.1980). Yniguez's alleged injury is not the result of any putatively unlawful action taken by Eden either, notwithstanding the fact that Eden has an enforcement connection with Article XXVIII sufficient to satisfy *Young.* Nothing in the record establishes that Eden has undertaken, or has threatened to undertake, any action which may be considered causally connected to any harm suffered by Yniguez; the only possible connection is derivative of Mofford's statement that she intends to enforce Article XXVIII, but that is not a sufficiently direct source of any injury to Yniguez to warrant Eden's inclusion in this action.

■ The defendants also argue that standing does not exist in this action because Yniguez's claims run afoul of the prudential standing limitation that a plaintiff generally must assert his or her own legal rights and interests. This issue is raised in response to the fact that Yniguez's assertion of standing is predicated in part on her right to assert the unconsti-tutionality of Article XXVIII on behalf of third parties not before the court whose rights are allegedly chilled by the overbreadth of the Article. The First Amendment doctrine of substantial overbreadth is an exception to the traditional prudential rule that a person to whom a law may be constitutionally applied may not challenge the law on the ground that it may conceivably be unconstitutionally applied to others. *New York v. Ferber,* 458 U.S. 747, 767–68, 102 S.Ct. 3348, 3359–60, 73 L.Ed.2d 1113 (1982). Yniguez has alleged a sufficiently colorable claim that Article XXVIII is overly broad in violation of the First Amendment rights of other Arizona government officials and employees not before the court to confer standing on her even if her own First Amendment rights are not violated by Article XXVIII. *Virginia v. American Booksellers Ass'n,* 484 U.S. at 392–93, 108 S.Ct. at 642–43.

*Facial Invalidity*

■ The plaintiffs argue that Article XXVIII should be invalidated on its face in part because it violates the First Amendment overbreadth doctrine. An overbreadth challenge is appropriately entertained in this case because Article XXVIII, by its literal wording, is capable of reaching expression protected by the First Amendment, such as Gutierrez's right to communicate in Spanish with his Spanish-speaking constituents. Facial invalidation of Article XXVIII is mandated, however, only if its overbreadth is both real and substantial judged in relation to the Article's plainly legitimate sweep, *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973), and the Article is not susceptible to a narrowing construction that would cure any constitutional infirmities. *Id.* at 613, 93 S.Ct. at 2916. While the Supreme Court has acknowledged that the concept of "substantial overbreadth" is not readily reduced to an exact definition, it has made it clear that a law cannot be facially invalidated as overbroad simply because some constitutionally impermissible applications of the law are conceivable. *Members of City Council of City of Los Angeles v. Taxpayers for Vin-*

**314**

*cent,* 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). For such an invalidation to be appropriate, a substantial number of instances must exist in which the overbroad law can be applied in contravention of the First Amendment. *New York State Club Ass'n, v. City of New York,* 487 U.S. 1, 13, 108 S.Ct. 2225, 2234, 101 L.Ed.2d 1 (1988).

■ In order to determine whether Article XXVIII reaches a substantial amount of constitutionally protected conduct, the court must first determine what the Article means, *Broadrick v. Oklahoma,* 413 U.S. at 618 n. 16, 93 S.Ct. at 2919 n. 16, which is a matter of substantial dispute between the parties. The plaintiffs' position is that Article XXVIII is a blanket prohibition on the use of any language other than English in the state workplace, whereas the defendants' position is that Article XXVIII does not reach that broadly because it is merely a directive for state and local governmental entities to act in English when acting in their sovereign capacities. For the purposes of the instant action, the court finds from Article XXVIII's plain language that it is a prohibition on the use of any language other than English by all officers and employees of all political subdivisions in Arizona while performing their official duties, save to the extent that they may be allowed to use a foreign language by the limited exceptions contained in § 3(2) of Article XXVIII. Given this interpretation of the Article, an interpretation obviously not binding on state authorities, *id.; Webster v. Reproductive Health Services,* —— U.S. ——, 109 S.Ct. 3040, 3060, 106 L.Ed.2d 410 (1989) (O'Connor, J., concurring), the court concludes that there is a realistic danger of, and a substantial potential for, the unconstitutional application of Article XXVIII.

The court's determination of Article XXVIII's facial validity is not dependent upon Yniguez having a First Amendment right to speak a language of her choice during the performance of her official duties, a "right" which the defendants assert does not exist. All the court need find, and all it does find in this regard, is

that Article XXVIII is so broad as to inhibit the constitutionally protected speech of third parties. While public employees, as a general proposition, enjoy less First Amendment protection than private citizens because governmental entities have a significant interest as employers in regulating the speech of their employees so as to promote the efficiency of public services, *Pickering v. Bd. of Educ. of TP. H.S. Dist. 205, Ill.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968), a state may not apply stricter First Amendment standards to its legislators than it may to private citizens, *Bond v. Floyd,* 385 U.S. 116, 132–133, 87 S.Ct. 339, 347–48, 17 L.Ed.2d 235 (1966), nor may a state require that its officers and employees relinquish rights guaranteed them by the First Amendment as a condition of public employment. *Abood v. Detroit Bd. of Education,* 431 U.S. 209, 234, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261 (1977). The sweeping language of Article XXVIII has such a prohibited effect however. When read at its full literal breadth, Article XXVIII would force Arizona governmental officers and employees whose use of a non-English language in the performance of their official duties is protected by the First Amendment, such as state legislators speaking to constituents in a language other than English, state employees officially commenting on matters of public concern in a language other than English, and state judges performing marriage ceremonies in a language other than English, to either violate their sworn oaths to obey the state constitution, and thereby subject themselves to potential sanctions and private suits, or to curtail their free speech rights.

Although the plaintiffs have not argued that Article XXVIII is unconstitutionally vague, vagueness affects the overbreadth analysis because in determining whether Article XXVIII is so overbroad as to deter others from engaging in otherwise protected expression the court has to evaluate the ambiguous as well as the unambiguous scope of the Article. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 n. 6, 102 S.Ct. 1186, 1191 n. 6, 71 L.Ed.2d 362 (1982). While the

defendants' assertion that the examples of Article XXVIII's unconstitutional reach proffered by the plaintiffs are too extreme to demonstrate the Article's facial unconstitutionality because they represent situations which plainly do not come within the rational parameters of Article XXVIII may be correct, the defendants' assertion only emphasizes Article XXVIII's potential for chilling First Amendment rights. *See Baggett v. Bullitt,* 377 U.S. 360, 373, 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377 (1964). If those affected by Article XXVIII are unclear as to its coverage, the result will be that they will " 'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked." *Id.* at 372, 84 S.Ct. at 1322. Yniguez's self-imposed decision to refrain from speaking Spanish while performing her job, a decision vociferously criticized as unfounded by the defendants, is but a product of her legitimate sensitivity to the perils posed by the Article's language and her desire to restrict her conduct to that which is unquestionably safe. *Id.* A law which reasonably results in such restrictions is substantially overbroad.

In determining the facial constitutionality of Article XXVIII the court must also consider any authoritative limiting construction placed on the enactment by Arizona state courts or enforcement agencies, *Broadrick v. Oklahoma,* 413 U.S. at 618, 93 S.Ct. at 2919, because a state law cannot be facially invalidated as overbroad if it is readily susceptible to a narrowing construction that would make it constitutional. *Virginia v. American Booksellers Ass'n,* 484 U.S. at 397, 108 S.Ct. at 645. As the Supreme Court has noted, the key to the application of this principle is that the state law must be "readily susceptible" of the limitation proffered by the state court or agency because a federal court lacks the power itself to rewrite a state law to conform it to constitutional requirements. *Id.*

No Arizona state court has as yet construed or interpreted Article XXVIII. The Arizona Attorney General has, however, construed Article XXVIII in a narrow fashion in a formal opinion, I89–009, an opinion which the defendants argue resolves the

overbreadth issue in this action. While the court must consider the Attorney General's opinion to some degree, *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972), the opinion is not binding on this court and the court declines to follow it. A state attorney general's interpretation of a state law which is not binding on the courts of that state cannot be accepted as authoritative by this court. *Virginia v. American Booksellers Ass'n,* 484 U.S. at 395, 108 S.Ct. at 643. Attorney General Corbin's opinion construing Article XXVIII is merely an advisory one under Arizona law and is not binding on either the Arizona courts, *Marston's, Inc. v. Roman Catholic Church of Phoenix,* 132 Ariz. 90, 94, 644 P.2d 244, 248 (1982), or on any citizen who sues under Article XXVIII's private right of action provision. Furthermore, the Attorney General's opinion does not address all of the issues raised by the plaintiffs in this action, the opinion's main concern being the effect of Article XXVIII on the use of non-English languages in the delivery of governmental services. More importantly, however, the Attorney General's interpretation of Article XXVIII does not amount to a sufficient limiting construction because the Article is not readily susceptible to the Attorney General's construction, a construction that is simply at odds with Article XXVIII's plain language.

The gist of the Attorney General's interpretation of Article XXVIII is that the English-only requirement applies solely to official acts of the state governmental entities and does not prohibit the use of languages other than English that are reasonably necessary to facilitate the day-to-day operation of government. The Attorney General's belief that Article XXVIII is directed only towards sovereign governmental acts centers upon § 3(1)(a) of Article XXVIII which provides, with a few limited exceptions, that the "State and all political subdivisions of this State shall act in English and in no other language." The Attorney General's interpretation of what "to act" means, however, in effect ignores § 1(3)(a)(iv) of Article XXVIII which states

that the Article applies to "all government officials and employees during the performance of government business." The various levels of legislative, executive and judicial branches of government in Arizona affected by Article XXVIII perform business in a whole variety of ways that do not rise to the level of "sovereign" acts, as the Attorney General apparently uses that term. The manner in which the term "act" is used in § 3(2) of the Article, the subsection setting forth the exceptions to the ban on the use of non-English languages, is illustrative of the unreasonableness of the Attorney General's limitation on the meaning of "act". Under the provisions of § 3(2)(c), for example, a governmental entity within Arizona "may act in a language other than English" to teach a student a foreign language as part of an educational curriculum. While the teaching of a foreign language by a public school teacher comes within the definition of performing government business, it does not come within the definition of performing a sovereign act. The Attorney General's restrictive interpretation of Article XXVIII is in effect a "remarkable job of plastic surgery upon the face of the ordinance," *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 153, 89 S.Ct. 935, 940, 22 L.Ed.2d 162 (1969), and one which this court cannot accept.

The defendants have not proffered any other limiting construction of Article XXVIII and the court is unable to discern any construction to which the Article is fairly subject that would limit its application in such a way as to render unnecessary or substantially modify the federal constitutional questions.

*Abstention*

■ The defendants, invoking the abstention doctrine of *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), argue that this court should abstain from considering the merits of this action in order to allow the Arizona courts the initial opportunity to determine the scope of Article XXVIII. A federal court may not abstain under *Pullman* unless the complaint touches a sensitive area

of social policy upon which federal courts should not enter unless no other alternative to its adjudication is available, a definitive ruling on the state issue would terminate the controversy, and the possibly determinative issue of state law is doubtful. *Ripplinger v. Collins,* 868 F.2d 1043, 1048 (9th Cir.1989). The court needs only to consider the first factor to determine that this is an inappropriate case for abstention. While cases involving facial challenges based on the First Amendment are not exempt from the invocation of the abstention doctrine, it is the position of the Ninth Circuit Court of Appeals that the first *Pullman* factor will almost never be present in such cases because the guarantee of free expression is always an area of particular federal concern. *Id.* The Ninth Circuit has, moreover, held to its policy that abstention is generally inappropriate in First Amendment cases even in suits in which the state court has not had the opportunity to narrow the allegedly unconstitutional statute. *Id.* at 1049. The Supreme Court has also been "particularly reluctant" to abstain in cases involving First Amendment facial challenges. *City of Houston, Texas v. Hill,* 482 U.S. 451, 467, 107 S.Ct. 2502, 2512, 96 L.Ed.2d 398 (1987). Furthermore, abstention would be inappropriate even if no First Amendment facial challenge existed in light of the court's conclusion that Article XXVIII is not obviously susceptible of a limiting construction. *Id.* at 468, 107 S.Ct. at 2513.

*Declaratory and Injunctive Relief*

Given the court's conclusion that Article XXVIII is substantially overbroad, Yniguez is entitled to a judgment pursuant to 28 U.S.C. § 2201 declaring Article XXVIII unconstitutional as violative of the First Amendment. Having so found, the court does not reach the plaintiffs' claims that Article XXVIII also violates the Fourteenth Amendment and 42 U.S.C. § 2000d et seq. An injunction restraining the enforcement or threatened enforcement of Article XXVIII has also been requested but the prerequisites for such relief have not been sufficiently met; moreover, the court can see no need for such relief even if an

injunction could properly be issued. In the absence of a pending enforcement action, Yniguez's burden of establishing a right to injunctive relief in federal court is much greater than her burden of establishing a right to declaratory relief. *Steffel v. Thompson,* 415 U.S. 452, 471–72, 94 S.Ct. 1209, 1221–22, 39 L.Ed.2d 505 (1974); *Polykoff v. Collins,* 816 F.2d 1326, 1333 (9th Cir.1987). While Yniguez has established a sufficient threat of enforcement to provide an actual controversy for purposes of Article III and the Declaratory Judgment Act, she has not established an enforcement threat sufficient to warrant injunctive relief. Injunctive relief is appropriate where there are " 'exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights.' " *Wooley v. Maynard,* 430 U.S. 705, 712, 97 S.Ct. 1428, 1434, 51 L.Ed.2d 752 (1977). The record before the court contains no showing of a substantial threat of irreparable injury to Yniguez or any other person to whom Article XXVIII is applicable if an injunction is not now issued and the court is confident that Governor Mofford will abide by its declaration of Article XXVIII's facial invalidity without the necessity of an injunction barring her and those acting at her behest or under her control from enforcing the Article. Therefore,

IT IS ORDERED that the defendants' Motion to Dismiss (doc. # 30) and defendants' Motion to Dismiss Plaintiff Gutierrez's Claim for Relief (doc. # 68) are granted in part and denied in part. They are granted to the extent that all parties except plaintiff Yniguez and defendant Mofford in her official capacity are dismissed from this action. The motions are denied in all other respects.

IT IS FURTHER ORDERED that the plaintiffs' Application for Preliminary Injunction (doc. # 15) is denied.

IT IS FURTHER ORDERED that Article XXVIII of the Constitution of the State of Arizona is hereby declared to be void as being invalid on its face in violation of the First Amendment of the Constitution of the United States.

APPENDIX

Article XXVIII of the Arizona Constitution provides as follows:

## ARTICLE XXVIII. ENGLISH AS THE OFFICIAL LANGUAGE

### 1. English as the Official Language; Applicability.

Section 1. (1) The English language is the official language of the State of Arizona.

(2) As the official language of this State, the English language is the language of the ballot, the public schools and all government functions and actions.

(3)(a) This Article applies to:

(i) the legislative, executive and judicial branches of government,

(ii) all political subdivisions, departments, agencies, organizations, and instrumentalities of this State, including local governments and municipalities,

(iii) all statutes, ordinances, rules, orders, programs and policies,

(iv) all government officials and employees during the performance of government business.

(b) As used in this Article, the phrase "This State and all political subdivisions of this State" shall include every entity, person, action or item described in this Section, as appropriate to the circumstances.

### 2. Requiring This State to Preserve, Protect and Enhance English.

Section 2. This State and all political subdivisions of this State shall take all reasonable steps to preserve, protect and enhance the role of the English language as the official language of the state of Arizona.

### 3. Prohibiting This State from Using or Requiring the Use of Languages Other Than English; Exceptions.

Section 3. (1) Except as provided in Subsection (2):

(a) This State and all political subdivisions of this State shall act in English and in no other language.

(b) No entity to which this Article applies shall make or enforce a law, order, decree or policy which requires the use of a language other than English.

(c) No governmental document shall be valid, effective or enforceable unless it is in the English language.

(2) This State and all political subdivisions of this State may act in a language other than English under any of the following circumstances:

(a) to assist students who are not proficient in the English language, to the extent necessary to comply with federal law, by giving educational instruction in a language other than English to provide as rapid as possible a transition to English.

(b) to comply with other federal laws.

(c) to teach a student a foreign language as part of a required or voluntary educational curriculum.

(d) to protect public health or safety.

(e) to protect the rights of criminal defendants or victims of crime.

### 4. Enforcement; Standing.

Section 4. A person who resides in or does business in this State shall have standing to bring suit to enforce this Article in a court of record of the State. The Legislature may enact reasonable limitations on the time and manner of bringing suit under this subsection.