**UNITED STATES of America**

v.

**Rafael TORMES–ORTIZ.**

**Cr. No. 88–0253 GG.**

United States District Court,
D. Puerto Rico.

March 19, 1990.

See also 710 F.Supp. 412.

Daniel Lopez Romo, U.S. Atty., and Guillermo Gil and Everett M. de Jesus, Trial Attys., U.S. Dept. of Justice, Guaynabo, P.R., for plaintiff.

Robert L. Moore, Miami, Fla., for defendant.

## OPINION AND ORDER

GIERBOLINI, District Judge.

Now pending are a motion for new trial and a motion challenging the legality of the jury verdict filed by defendant Rafael Tormes–Ortiz (Tormes). Defendant Tormes was charged along with forty other defendants in a multicount indictment involving a drug smuggling conspiracy which spanned over a period of four years. Of the forty-one (41) defendants indicted, twenty-nine (29) were arrested and before the commencement of the first trial, sixteen (16) defendants entered a plea of guilty. On May 23, 1989 thirteen (13) defendants went to trial and on June 20, 1989 a mistrial was declared. On the day of the mistrial, two (2) defendants pled guilty. On August 1, 1989 the second trial commenced and after the jury had been selected, an additional eight (8) defendants entered guilty pleas. Only three defendants went to trial, and after lengthy proceedings, the jury rendered a verdict of guilty as to two (2) of the defendants. Specifically, a verdict of guilty was rendered against Tormes on counts 1, 11, 12, 20, 28, 35, 36, 38 and 39 of the indictment for several violations of the Controlled Substances Act and a firearms violation.

Now defendant confronts us with a motion for new trial containing seven garden variety post-conviction requests which require no extended discussion. Defendant contends that the court erred in denying: 1) a motion to suppress certain items seized from defendant's person after his arrest in San Sebastian, Puerto Rico on or about June 23, 1988; 2) a motion to suppress physical and oral statements by him during the seizure at his residence on Ginas Corvalan Street in Cupey, Rio Piedras, Puerto Rico on or about October 14, 1985; 3) a motion for mistrial filed on or about August 16, 1989 alleging prejudice from the jury's observation that the number of defendants had dwindled substantially; 4) a motion for mistrial filed on or about August 29, 1989 complaining that the court endorsed the credibility of government witness Claribel Castillo–Guzman in the presence of the jury; 5) a motion for mistrial based on several questions the court asked a chemist following cross-examination; 6) a request for the government to supply to defense counsel all records of psychiatric treatment related to government witness Belinda Hill's use of alcohol and narcotic drugs; 7) a request seeking the notes and reports of FBI agents as to substantial verbatim statements of witness Arnaldo Martinez, a/k/a Cepillin, regarding his narcotics activities; and 8) a motion alleging that the jury possibly failed to deliberate in the English language.

With the exception of item number eight, all of the aforementioned matters were previously raised by defendant, extensively argued by the parties and denied by this court after due consideration. Since nothing new has been presented in the instant motion, the requests contained in items one through seven are hereby DENIED for the same reasons previously expressed by the court. In the remaining item number eight, defendant requests that we inquire if the jury deliberated in the Spanish rather than in the English language. Defendant also filed a post-verdict motion dealing exclusively with this matter. Although this is an issue of first impression, defendant has failed to submit a memorandum of law as required by Local Rule 311.2 of our Local Rules.[1] The government has filed a

---

1.    **2. Grounds for motions.** All motions shall state with particularity the grounds therefor and shall set forth the relief or order sought.

Motions shall be accompanied by a brief which shall contain a concise statement of reasons in support of the motion, and citations of authorities upon which the movant

one page opposition. Despite the failure of both parties to adequately brief their respective positions, we will proceed to entertain this matter.

Defendant's counsel contends that after the jury began to deliberate, he "inadvertently overheard what sounded like loud voices coming from the area of the closed jury room door. [T]hese voices were speaking Spanish, not English."[2] Counsel for defendant states that he smelled food, that he was informed that food had been ordered earlier in the evening for the jury, and that he had no way of knowing whether the jury was deliberating, eating dinner or both when he heard the jury speaking in Spanish. From this defendant jumps to the unsupported conclusion that the deliberations transpired in violation of 28 U.S.C. §§ 1861, *et seq.* which prescribe the minimum requirements for eligibility and competency of jurors. Defendant also submits, albeit without elaboration and without citing authorities, that the deliberative process constituted a denial of his right to due process of law. Specifically, defendant argues that the law requires that all jurors be able to read, write, speak and understand the English language in order to be qualified for jury service, but none of the jurors in this case were tested or screened to determine whether they could speak and/or understand deliberations in the Spanish language. An evidentiary hearing is requested for the foreman of the jury to state in what language were the deliberations conducted.

Federal Rule of Evidence 606(b) is based on the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences. *See Government of the Virgin Islands v. Gereau,* 523 F.2d 140, 149, n. 22 (3rd Cir.1975); S.Rep. No. 93–1277, p. 13 (1974). Rule 606(b) provides that:

> Upon an inquiry into the validity of a verdict … a juror may not testify as to any matter or statement occurring during the course of the jury deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assert to or dissent from the verdict … or concerning the juror's mental processes in connection therewith … [3]

The Advisory Committee's notes under this rule indicate that the main focus of the federal decisions on which the rule is based has been to insulate the manner in which the jury reached the verdict including arguments, statements, discussions, mental and emotional reactions, votes, and any other feature of the process.

■ The rule serves three principal functions: to promote free and uninhibited discussions during deliberations, to protect jurors from attempts to influence them after trial, and to preserve the finality of verdicts. 8 Wigmore § 2353 (McNaughton Rev.1961); Fed.R.Evid. 606(b) advisory committee's note, *see also Attridge v. Cencorp Div. of Dover Tech. Intern.,* 836 F.2d 113 (2d Cir.1987). Furthermore, the legislative history focuses on the conclusion that Congress made a deliberate decision to disallow juror testimony as to the juror's mental processes or fidelity to the court's instructions. *See Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987).

Courts have always been hesitant to inquire into a jury's thought processes; this deference brings to the criminal process

---

relies. If the time for filing supporting documents is extended in the manner prescribed by subsection .6 of this rule, the brief of movant need not be filed until the date specified in the extension order or stipulation.

Although this noncompliance is sufficient to deny defendant's motion, due to the novelty of the matter presented we have decided to address it.

**2.** See defendant's post-verdict motion at pp. 2–3.

**3.** The rule goes on to provide an exception to the general prohibition against juror testimony for testimony relating to "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Fed.R.Evid. 606(b). *See, e.g. Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1143–47 (5th Cir.1988) (attempted bribery of jury). Defendant does not contend that either exception is applicable here.

the collective judgment of the community and an element of needed finality. *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) As early as 1915, the Supreme Court expressed its concern that jury deliberations be protected from public scrutiny:

> [L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an efort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference." *McDonald v. Pless*, 238 U.S. 264, 267–268, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915).

*See also Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892).

■ Moreover, although a defendant has a right to a fair trial, this right is not absolute; it may be outweighed by other concerns including the jury's right to privacy and protection from harassment. *Maldonado v. Missouri Pacific Ry. Co.*, 798 F.2d 764, 770 (5th Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 762 (1987). Rule 606(b) strikes a constitutional balance in order to protect the defendant's right to a fair trial from substantial juror misconduct while protecting other legitimate interests as well, such as preventing the harassment of jurors, supporting the finality of verdicts and preserving the community's trust in a system which relies on the decisions of lay people. *Tanner v. United States, supra*, 483 U.S. at 108, 107 S.Ct. at 2741; *United States v. Sjeklocha*, 843 F.2d 485 (11th Cir.1988). For that reason, exceptions to the rule have been recognized only in situations in which an extraneous influence was alleged to have affected the jury. In *Mattox v. United States*, 146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892) the Court admitted the testimony of jurors describing how they heard and read prejudicial information which had not been admitted into evidence. Likewise, in *Parker v. Gladden*, 385 U.S. 363, 365, 87 S.Ct. 468, 470, 17 L.Ed.2d 420 (1966), the Court held admissible juror testimony on influence by outsiders. In *Remmer v. United States*, 347 U.S. 227, 228–230, 74 S.Ct. 450, 451–452, 98 L.Ed. 654 (1954) the Court allowed juror testimony as to a bribe offered to a juror. However, absent this exception for external influence, the Court has consistently adhered to the common-law rule prohibiting the admission of juror testimony to impeach a jury verdict. *McDonald v. Pless, supra; Tanner v. United States, supra*, 483 U.S. at 117, 107 S.Ct. at 2746.

Although an evidentiary hearing has been required when there is a showing that extrinsic influence or relationships have tainted the deliberations, this does not detract from, but rather harmonizes with, the significant government interest in insulating the jury's deliberative process. *See Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Nevertheless, the integrity of jury proceedings must not be jeopardized by unauthorized intrusions into the internal processes of the jury. *Remmer v. United States, supra*, 347 U.S. at 229, 74 S.Ct. at 451.

■ We note that Rule 606(b) does not bar juror testimony as to whether the verdict delivered in open court was in reality that agreed upon by the jury. *Robles v. Exxon Corp.*, 862 F.2d 1201 (5th Cir.1989); *United States v. Dotson*, 817 F.2d 1127, 1130 (5th Cir.), *modified on rehearing*, 821 F.2d 1034 (1987). Since such inquiries are not addressed to the validity of the verdict, they are not covered by the rule. In *Dotson*, the court held it was proper to admit testimony to investigate the possibility of a clerical error in a verdict, not its validity in the sense of being correct or proper. 817 F.2d at 1130. Conversely, inquiry into the conscience or compliance of jurors requires inquiry into a matter that essentially in-

heres in the verdict, *Mattox v. United States, supra,* 146 U.S. at 149, 13 S.Ct. at 53, and as such is strictly forbidden.

■ Defendant has failed to present any plausible argument that Rule 606(b) is inapplicable to the inquiry he seeks in this case, and in fact, there appears to be no support for such a proposition. Whether the jury deliberated in Spanish or English would undoubtedly require an inquiry into the jury's deliberations and thought processes that courts should not undertake. In this connection, it bears to repeat with Sir Humphrey Davy, "Language is not only the vehicle of thought, it is a great and efficient instrument of thinking" [4]; lexicographer Samuel Johnson adds, "Language is the dress of thought".[5] Defendant's inquiry goes to the substance of what the jury was asked to decide, necessarily implicating the jury's mental processes since it questions the jury's understanding of the court's instructions and their application to the facts of this case. *Cf. Robles v. Exxon Corp., supra.* See also *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 602, n. 30 (5th Cir.) (whether or not the jury misunderstood the charge of the court is not a question to be reexamined after the verdict has been rendered), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974). "[I]t is a peculiar facet of the jury institution that once a verdict is rendered, no judicial inquiry is permissible to determine if in fact the court's instructions were properly followed." *United States v. D'Angelo,* 598 F.2d 1002, 1004 (5th Cir.1979).

■ Moreover, we have found no support for the proposition that deliberations must be conducted in English. The relevant statutory requirement is that a juror be able to speak, read, write and understand the English language with a certain degree of proficiency, 28 U.S.C. § 1865(b)(2) and (3). The compliance with this requirement was adequately assured in this case through the thorough examination of the prospective jurors during the *voir dire* as shown by the record and by the great number of peremptory challenges accorded to defendants. The possibility that the jurors in this case listened to all the evidence, and the court's instructions on how to consider it, in English and later conducted their deliberations in Spanish is of no legal consequence and testimony to this effect would violate Rule 606(b).

■ From our experience with juries in this district and after observing the jury in this case during the trial which lasted almost two months, we find that the jurors in this case were proficient both in English and Spanish.[6] In fact, there was no communication by a juror to the court at any time during the trial or the deliberations that he or she was experiencing any problem understanding the ongoing discussions between the jurors. The defendant has not cited, and we have not found any law prohibiting a fully bilingual jury like the one in this case, to hear evidence in one language and to deliberate in another. The reason for the absence of such a prohibition seems to us clear and evident. A law containing a prohibition of that nature would run afoul of the first amendment as an infringement on the freedom of speech. The freedom to think and to speak one's mind is too valuable to be demeaned and undermined in such a manner.

Likewise, the complex process of thinking is so inextricably interwoven with language that prohibiting the use of the latter will obviously interfere with the former, thus producing an Orwellian effect [7] which would be clearly impermissible. The requested inquiry unquestionably would solicit testimony as to a juror's mental processes that is forbidden by Rule 606(b).[8]

---

4. THE NEW DICTIONARY OF THOUGHTS, Standard Book Company at p. 339 (1963).

5. *See* note 4, *supra.*

6. The prospective jurors in this district are routinely examined by a district judge, in English, with an eye to their proficiency in English, before being admitted to the venire. *Thornburg v. United States,* 574 F.2d 33, 35 (1st Cir.1978).

7. See novel *1984* by English writer Eric Blair writing under his famous pen name George Orwell.

8. Since the language in which jurors conduct their deliberations constitutes a verbalization of

Wherefore, for the reasons stated above, defendant's motions filed on September 29 and October 5, 1989 are hereby DENIED. The verdict of the jury as entered stands.

SO ORDERED.

their mental processes, defendant's petition would require us to engage in exactly the sort of intrusive inquiry which the rule and the courts have traditionally censured.