976 F.2d 724
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Henry CASTRO-POUPART, Plaintiff, Appellant,
v.
UNITED STATES of AMERICA, Defendant, Appellee.
 No. 91-1877.
 United States Court of Appeals,
First Circuit.
 Sept. 30, 1992
 
 Appeal from the United States District Court for the District of Puerto Rico [Hon. Gilberto Gierbolini, U.S. District Judge]
 Henry Castro-Poupart on brief pro se.
 Robert S. Mueller, III, Assistant Attorney General, Mary Lee Warren, Chief, and Eumi L. Choi, Attorney, Criminal Division, Narcotic and Dangerous Drug Section, Department of Justice, on brief for appellee.
 D.Puerto Rico
 AFFIRMED.
 Before Breyer, Chief Judge, Campbell, Senior Circuit Judge, and Selya, Circuit Judge.
 Per Curiam.
 
 
 1
 Appellant Henry Castro Poupart (Castro) appeals from a district court judgment summarily dismissing his motion to vacate his conviction and sentence under 28 U.S.C. § 2255. We affirm.
 
 I.
 
 2
 Castro was convicted after a jury trial of conspiring to possess marijuana with the intent to distribute it and of aiding and abetting the possession with the intent to distribute marijuana in violation of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 2. He was sentenced as a dangerous special drug offender to two consecutive fifteen year prison terms. His conviction was affirmed on direct appeal. See United States v. Rivera Santiago, 872 F.2d 1073, cert. denied, 492 U.S. 910 (1989).[1]
 
 
 3
 Thereafter Castro filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. His motion and supplemental filings asserted four grounds for relief none of which had been raised at trial or on Castro's direct appeal. First, Castro argued that the English language proficiency requirement of the Jury Selection and Service Act, 28 U.S.C. § 1865(b)(2) and (3), violated his Sixth Amendment right to a jury drawn from a fair cross-section of the community, the First Amendment, and the Equal Protection clause.[2] Second, Castro claimed that his trial counsel was ineffective because she failed to disqualify herself and take the witness stand to contradict one of the government's witnesses at trial. Castro's third claim was a variation on the second i.e., that his trial counsel was ineffective because she failed to cross-examine the government's star witness, Jose Panzardi-Alvarez. As both of these ineffective assistance claims were not raised on direct appeal, Castro alleged that his appellate counsel -a different attorney was also ineffective. Finally, Castro claimed his conviction and sentence must be set aside because a magistrate presided over the jury empanelment in purported violation of United States v. Gomez, 490 U.S. 858 (1989). Although Castro did not raise this objection at trial, he claimed that this should not preclude application of Gomez because defense counsel erroneously advised him that such an objection would be futile in light of the local rule then in effect in Puerto Rico and this court's decision in United States v. Rivera-Sola, 713 F.2d 866, 873-74 (1st Cir. 1983) (holding plain error did not inhere in magistrate's empanelment of jury absent defendant's objection).[3]
 
 
 4
 After the government filed a response to Castro's § 2255 motion, and both Castro and the government submitted additional filings, the district court referred the case to a magistrate judge, who recommended that the § 2255 motion be dismissed without an evidentiary hearing. The district court adopted this recommendation. In a comprehensive memorandum of decision, the court ruled that the exclusions worked by the English language proficiency requirement of the Jury Selection and Service Act had been approved by this court in United States v. Benmuhar, 658 F.2d 14 (1st Cir. 1981), cert. denied, 457 U.S. 1117 (1982), and reaffirmed in United States v. Aponte-Suarez, 905 F.2d 483 (1st Cir.), cert. denied, 111 S. Ct. 531 (1990), therefore Castro's constitutional challenge to the Jury Selection and Service Act failed.[4] The court rejected Castro's ineffective assistance of counsel claims on the grounds that (1) trial counsel's alleged conflict of interest was nonexistent and this claim was also barred under Frady, (2) counsel's failure to cross-examine Panzardi-Alvarez was not shown to be outside the range of professionally competent assistance and, even assuming error, Castro again had not demonstrated the requisite prejudice. Finally, the court held that Gomez did not apply retroactively to cases on collateral review because it created a new rule that did not fall within either of the exceptions recognized in Teague v. Lane, 489 U.S. 288, 310-11 (1989) (holding that new constitutional rules of criminal procedure should not be applied retroactively to cases on collateral review unless a new rule (1) "places 'certain kinds of primary, individual conduct beyond the power of the criminal law-making authority to proscribe,' " or (2) "requires the observance of 'those procedures that ... are "implicit in the concept of ordered liberty ... " ' ")(citations omitted). Castro filed a timely notice of appeal.
 
 II.
 
 5
 On appeal, Castro argues that the district court erred in refusing to apply Gomez retroactively because it did not create a "new rule." The government contends to the contrary and urges us to hold that Gomez created a new rule which does not apply retroactively to cases on collateral review. We find it unnecessary to resolve this question. As it is undisputed that Castro did not object to the magistrate's empanelment of the jury at trial, the instant appeal is controlled by Peretz v. United States, 111 S. Ct. 2661, 2664-67, 2671 (1991). In Peretz, the Court concluded that neither the Federal Magistrates Act nor Article III are offended when a defendant consents or fails to object to the magistrate's empanelment of a jury. That conclusion defeats Castro's Gomez claim. See United states v. Martinez-Torres, 944 F.2d 51 (1st Cir. 1991). Moreover, we reject Castro's argument that Peretz does not apply because he did not affirmatively consent to the magistrate's empanelment nor effectively waive his right to have an article III judge preside at that time because trial counsel ineffectively advised him that such an objection would be futile. To be sure, we have now held that Rivera Sola was not a "solid wall" of precedent that justified defense counsel in believing that a timely objection to a magistrate's empanelment would be futile. See United States v. Lopez Pena, 912 F.2d 1542, 1549 (1st Cir. 1989). Nonetheless, in Rivera Sola, 713 F.2d at 874, we endorsed the practice of magistrates presiding at jury selection, albeit in dicta. ("We think that a magistrate can effectively conduct the voir dire and preside at the selection of juries in civil and criminal cases thus saving valuable time for our busy district judges.") In view of this endorsement, we cannot now say that counsel's failure to raise such an objection, even at the defendant's request, constituted ineffective assistance vitiating the defendant's waiver of his right to have an article III judge preside. "The Constitution ... 'does not insure that defense counsel will recognize and raise every conceivable constitutional claim." Carillo v. Brown, 807 F.2d 1094, 1100 n. 27 (1st Cir. 1986)(citing Engle v. Isaac, 456 U.S. 107, 134). At the time of Castro's trial in February 1987, counsel could reasonably have believed the local rule allowing magistrates to empanel juries to be lawful. Consequently, we cannot say that counsel was "ineffective" in persuading Castro to forego objecting to the magistrate's empanelment without advising him of his right to an article III judge. Effective assistance is not necessarily error free assistance. See, e.g., Featherstone v. Estelle, 948 F.2d 1497,1507 (9th Cir. 1991); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).[5]
 
 
 6
 The district court also properly dismissed Castro's constitutional challenge to the English language proficiency requirement in the Jury Selection and Service Act. In United States v. Benmuhar, 658 F.2d at 18-20, this court rejected a similar Sixth Amendment challenge to a Puerto Rican jury on the ground that the English language proficiency requirement in 28 U.S.C. § 1865(b)(2) & (3) was justified by the government's "significant" interest in having the national courts conduct business in the national language. In United States v. Aponte-Suarez, 905 F.2d at 492, this court reaffirmed Benmuhar. We reasoned that even assuming that declining English proficiency in Puerto Rico resulted in a smaller pool of eligible jurors and a "systematic exclusion" in the jury selection process, "the overwhelming national interest served by the use of English in a United States court justifies conducting proceedings in the District of Puerto Rico in English and requiring jurors to be proficient in that language." Id. Castro's Sixth Amendment claim is barred by this holding. Castro's First Amendment challenge is based on dicta in United States v. Tormes-Ortiz, 734 F. Supp. 573 (D.P.R. 1990), which denied a convicted drug smuggler's motion for a new trial on the ground, inter alia, that the fact that the jury may have deliberated in Spanish instead of English was of no legal consequence. The district court correctly rejected this and other cases Castro cited as not controlling. They provide no basis for holding the Jury Selection and Service Act violates the First Amendment.[6]
 
 
 7
 Finally, both Castro's ineffective assistance claims are patently meritless. Castro's first such claim alleged that trial counsel had a conflict of interest that required her disqualification. This purported conflict allegedly arose when one of the government's witnesses Carlos Riollano testified that Castro reminded him that he (Riollano) had been to Castro's house to pick up some marijuana that other defendants had smuggled into Puerto Rico.
 
 
 8
 At trial, Castro's counsel attempted to exclude Riollano as a witness on the ground that he had made inconsistent statements concerning Castro's involvement in the smuggling operation. Riollano gave his first statement to government agents (who reduced it to writing) on September 25, 1986. That statement did not implicate Castro. During the course of the trial in February 1987, Riollano informed government agents that he remembered meeting Castro in prison in August 1986 and that Castro had made the incriminating remark then. Defense counsel interviewed Riollano shortly before he testified. Riollano apparently did not inform her of Castro's admission.[7] Castro now argues that after Riollano related Castro's admission to the jury, defense counsel should have disqualified herself and taken the stand to impeach Riollano.
 
 
 9
 As defense counsel interviewed Riollano in her capacity as counsel for Castro, no conflict of interest arose and disqualification was not required. On cross-examination, defense counsel established that (a) even though Castro allegedly made this admission before Riollano gave his first statement to the government, it was not recorded in Riollano's first statement, (although Riollano testified that he recalled telling the agents the details of his meeting with Castro when he gave his first statement), and, (b) Riollano had entered into a plea agreement with the government under which he was not prosecuted for numerous drug offenses in return for his testimony. The record thus supports the district court's conclusion that defense counsel fully explored Riollano's inconsistent statements on cross-examination. This ineffective assistance claim was properly dismissed.[8]
 
 
 10
 Counsel's decision to forego cross-examination of Panzardi-Alvarez appears to have been a reasoned tactical decision. At trial, Panzardi-Alvarez testified that Castro's house was used to store marijuana that had been smuggled into Puerto Rico by plane on December 12, 1982. Panzardi testified that two other codefendants first took this marijuana by truck to a third codefendant's house. The truck did not fit into this codefendant's carport, so it was taken to Castro's house because, in Panzardi's words: "I knew him and he had worked with me and Cesar [Panzardi's right hand man], decided to take it there." (Tr. Vol. V, p. 348). Panzardi also testified that Castro was one of the people who sold some of this marijuana.
 
 
 11
 Defense counsel did not cross-examine Panzardi. Instead, she adduced evidence that Castro suffers from schizophrenia to support an insanity defense. In her closing argument, defense counsel attacked the gaps in Panzardi's testimony.[9] She did not address Panzardi's testimony that Castro participated in selling this marijuana.
 
 
 12
 In view of counsel's efforts to establish an insanity defense, counsel's decision not to cross-examine Panzardi appears to have been a strategic choice. Castro argues that Panzardi committed perjury and that cross-examination was essential because Panzardi left the jury with the false impression that he participated in bringing the marijuana to Castro's house when, in fact, he could not possibly have done so because he was being detained at the police station when this allegedly happened. This overstates the inferences one could draw from Panzardi's testimony. Panzardi's statement that "Cesar" decided to take the marijuana to Castro's house did not suggest that Panzardi was present when this happened. Consequently, we discern no prejudice from the decision to forego cross-examination. While cross-examination might have been fruitful, it equally well might have backfired. Tactical decisions generally will not support an ineffective assistance claim. United States v. Moreno Morales, 815 F.2d 725, 751-52 (1st Cir.), cert. denied, 484 U.S. 966 (1987). This principle applies here. The district court properly dismissed this ineffective assistance claim.
 
 
 13
 Affirmed.
 
 
 
 [1]
 Although we affirmed Castro's conviction, we vacated a special parole term that the district court imposed as part of his sentence. See 872 F.2d at 1090. Thereafter, Castro filed a motion to correct his sentence under Fed. R. Crim. Pro. 35 on the ground that the district court erred in sentencing him as a "dangerous special drug offender" under 21 U.S.C. § 849(a)((1) (repealed effective November 1, 1987). The district court denied Castro's motion. This court affirmed. See United States v. Henry Castro Poupart, slip op. No. 91-1597 (1st Cir., March 6, 1992)
 
 
 [2]
 28 U.S.C. § 1865(b)(2) and (3) provide that district judges "shall deem any person qualified to serve on grand and petit juries ... unless he -
 (2) is unable to read, write, and understand the English language with the proficiency sufficient to fill out satisfactorily the juror qualification form;
 (3) is unable to speak the English language; ... "
 
 
 [3]
 It appears that at the time of Castro's trial, Local Rule 13.6N of the United States District Court for the district of Puerto Rico authorized magistrates to "conduct voir dire and select petit juries in civil and criminal cases...." United States v. Rivera Sola, 713 F.2d at 873
 
 
 [4]
 The court further found that this claim was barred by Frady v. United States, 456 U.S. 152 (1982), because Castro did not raise it at trial nor on direct appeal and had not shown the cause and prejudice required to excuse this procedural default
 
 
 [5]
 Castro's reply brief alleges that Judge Acosta began empaneling the jury but took ill and delegated this task to magistrate judge Arenas. Castro claims that Judge Acosta's illness constitutes cause for his procedural default because it is a factor external to his defense that would have rendered any objection to the magistrate's empanelment futile. See Murray v. Carrier, 477 U.S. 478, 488 (1986)(noting that where "objective factor external to the defense" precludes counsel's compliance with procedural rule, "cause" excusing procedural default may exist). Alternatively, Castro contends that his Gomez claim was not reasonably available to defense counsel at trial, an argument which seems to contradict the ineffective assistance claim raised in brief. As both points are being raised for the first time on appeal and this case does not present a gross miscarriage of justice, we decline to consider these new arguments. See Hernandez-Hernandez v. United States, 904 F.2d 758, 763 (1st Cir. 1990)
 
 
 [6]
 On appeal, Castro neither presses his equal protection claim nor a variety of claims prescinding from certain cases cited below. See, e.g., DeLong v. Brumbaugh, 703 F. Supp. 399 (W.D. Pa. 1989)(holding state judge violated federal Rehabilitation Act, 29 U.S.C. § 794, by excluding deaf woman from jury array), and Yniguez v. Mofford, 730 F. Supp. 309 (D. Ariz. 1990(declaring article of Arizona Constitution making English official state language overbroad under the First Amendment). We further note that Castro has not alleged facts sufficient to establish "cause" for his failure to raise this issue at trial and on appeal. He makes the conclusory assertion that he asked both trial and appellate counsel to raise this claim but that they failed to do so. As the claim is patently meritless, neither counsel can be faulted. See Porcaro v. United States, 784 F.2d 38, 43 (1st Cir.), cert. denied, 479 U.S. 916 (1986)(where objections to grand jury composition must be filed before trial, § 2255 petitioner failed to establish ineffective assistance of counsel as cause excusing procedural default given lack of success of similar challenges to jury selection plans)
 
 
 [7]
 The Assistant U.S. Attorney informed defense counsel of Riollano's expected testimony the day after she interviewed him
 
 
 [8]
 In this regard this case is distinguishable from those Castro cites, i.e., Government of Virgin Islands v. Zepp, 748 F.2d 125, 135 (3d Cir. 1984) and United States v. Iorizzo, 786 F.2d 52, 54 (2d Cir. 1986), where defense counsel had actual conflicts of interest that inhibited their defenses. In Zepp, counsel had a personal interest adverse to his client's defense. In Iorizzo, defense counsel's prior representation of a government witness caused counsel to forego a critical line of inquiry on cross-examination. Castro's counsel was not so inhibited
 
 
 [9]
 For example, counsel pointed out that there was no evidence that Castro had been paid for storing this marijuana, nor that the marijuana was unloaded at his house (assuming the jury rejected Riollano as incredible)